TSUGAWA LAU & MUZZI LLLC
A HAWAII LIMITED LIABILITY LAW COMPANY

CHRISTOPHER J. MUZZI          (6939)
LEILA ROTHWELL SULLIVAN      (7626)
Bishop Place
1132 Bishop Street, Suite 2400
Honolulu, HI 96813
Telephone No.:  (808) 531-0490
Facsimile No.:  (808) 534-0202
Email:  cmuzzi@hilaw.us,
          LRS@hilaw.us

Attorneys for Plaintiffs
OHANA CONTROL SYSTEMS, INC. and
MICHAEL AMIR BOROCHOV

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OHANA CONTROL SYSTEMS, INC. and MICHAEL AMIR BOROCHOV, <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF HONOLULU; WAYNE K. MASUDA; SHELDON YASSO; TIM CAIRES; JEFFREY K. LEE; DAVID MALONE; and DOE DEFENDANTS 1 - 20, <br><br> Defendants. | Case No.:  _____ <br><br><br> **COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS** |

## **COMPLAINT**

Plaintiffs OHANA CONTROL SYSTEMS, INC. and MICHAEL AMIR BOROCHOV, by and through their attorneys, Tsugawa Lau & Muzzi LLLC, a Hawaii Limited Liability Company, for cause of action against the above-named Defendants alleges and avers as follows:

1.      Plaintiff OHANA CONTROL SYSTEMS, INC. ("Ohana") is a Hawaii corporation with its primary place of business in the City and County of Honolulu, Hawaii.

2.      Ohana is engaged in the business of selling, installing, testing, servicing, and maintaining fire alarm systems, among other things.

3.      MICHAEL AMIR BOROCHOV ("Amir") is and has been a citizen and resident of the City and County of Honolulu, Hawaii.

4.      Amir was born in Israel and immigrated to the United States when he was 8 years old.

5.      Amir is of the Jewish faith.

6.      Amir became the President of Ohana in or about April 2009.

7.      Upon information and belief, none of the other similarly situated fire alarm installers in Honolulu are operated by an Israeli or a Jewish person.

8.     Defendant CITY AND COUNTY OF HONOLULU ("Defendant City & County") is and has been a duly organized municipal corporation of the State of Hawai'i at all relevant times.  The Honolulu Fire Department ("HFD") is a department and agency of Defendant City & County.

9.     Defendant WAYNE K. MASUDA ("Defendant Masuda") is and has been a citizen and resident of the City and County of Honolulu, State of Hawaii, and was employed by HFD at all relevant times.

10.    Defendant SHELDON YASSO ("Defendant Yasso") is and has been a citizen and resident of the City and County of Honolulu, State of Hawaii, and was employed by HFD until approximately 2017.

11.    Defendant TIM CAIRES ("Defendant Caires") is and has been a citizen and resident of the City and County of Honolulu, State of Hawaii, and is and has been employed by the HFD at all relevant times.

12.    Defendant JEFFREY K. LEE ("Defendant Lee") is and has been a citizen and resident of the City and County of Honolulu, State of Hawaii, and was employed by the HFD at various times during the relevant time.

13.    Defendant DAVID MALONE ("Defendant Malone") is and has been a citizen and resident of the City and County of Honolulu, State of Hawaii, and has been employed by the HFD during the relevant time.

14.     Defendant Masuda was a Battalion Chief at HFD and oversaw Defendants Yasso, Caires, Lee and Malone.

15.     Defendant Yasso was a captain of the HFD Fire Prevention Bureau and supervised Defendant Caires and Defendant Lee.

16.     Defendant Caires became captain of the HFD Fire Prevention Bureau after Defendant Yasso and supervised Defendant Lee and Defendant Malone.

17.     Defendants Masuda, Yasso, Caires, Lee and Malone are being sued in their personal capacity.

18.     DOE DEFENDANTS 1 – 20 ("DOE Defendants") are individuals whose true identities and capacities are as yet unknown to Plaintiffs and their counsel, despite diligent inquiry and investigation, and who acted herein as described more particularly below in connection with the wrongful conduct alleged herein and who in some manner or form not currently discovered or known to Plaintiffs may have contributed to or be responsible for the injuries alleged herein.  The true names and capacities of DOE Defendants will be substituted as they become known.

## JURISDICTION AND VENUE

19.     Jurisdiction and venue are proper in the United States District Court for the District of Hawaii.

20.    This action arises under the Constitution and laws of the United States of America and is brought pursuant to 42 U.S.C. § 1983, *inter alia*.

21.    This Court has subject matter jurisdiction over Plaintiffs' claims involving questions of federal law pursuant to 28 U.S.C. §§ 1331 and 1343.  Any state law claims form part of the same case or controversy as gives rise to Plaintiffs' federal law claims and fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

22.    This Court has jurisdiction over Plaintiffs' claims for attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as all events or omissions giving rise to Plaintiffs' claims occurred in the District of Hawai'i.

## SUMMARY OF COMPLAINT

24.    The HFD Fire Prevention Bureau is an arm of HFD, and various Sections of the Fire Prevention Bureau are responsible for, among other things, reviewing building construction plans to ensure compliance with the applicable fire code and conducting inspection and acceptance testing of fire alarm systems.

25.   Because the HFD Fire Prevention Bureau's mandate is to prevent fires, it should be working collaboratively with fire alarm installers, like Ohana, to make sure that building plans specify applicable fire code compliant fire alarm systems and that the fire alarm systems, as installed, comply with the applicable fire code.  These life safety matters are of great public importance.

26.   Instead, HFD Fire Prevention Bureau arbitrarily, capriciously, and maliciously has engaged in a years' long course of conduct to selectively enforce the applicable fire code and other policies or procedures against Ohana based on whim, caprice or malice, contrary to how other similarly situated fire alarm installers are treated.

27.   As described herein, one of the Defendants, Defendant Lee, has made anti-Semitic statements about Amir to one of Ohana's competitors, including calling Amir a "shyster".  Mr. Lee also called Amir a "crook", and told the competitor that he does not like Amir.

28.   As described herein, on more than one occasion, certain of the Defendants sent to Ohana's competitor unrequested copies of government records that included Ohana's trade secrets, in violation of Hawaii Revised Statutes ("HRS") chapter 482B and HRS § 92F-17 and not in good faith, and requested that Ohana's competitor comment on the

documents.   Defendant HFD later either hid or destroyed these communications when those communications were sought by subpoena in a different litigation.

29.   As described herein, Defendant Caires contacted by email the company whose fire alarm systems Ohana exclusively installs, circumventing both Ohana and the electrical engineer on record, thereby resulting in interference with Ohana's business relationship with the company.   The emails from Defendant Caires were an inappropriate and wrongful effort to undercut Ohana, interfere with its relationship with its supplier, and perhaps to benefit Ohana's competitors.

30.   As further described herein, from approximately May 2015 to as recently as July 29, 2021, one or more Defendants have continually and consistently required that Ohana meet more "requirements" to pass inspections than is required of other fire alarm installers, tried to rescind a prior passing inspection for an improper reason; required that Ohana install expensive equipment that Defendants do not require any other fire installer to install; approved plans and then at inspection insisted on additional or different work than reflected on the approved plans, usually at the last minute and costing many thousands of dollars and resulting in significant delays; insisted on payment of inspection fees and then immediately "canceling" the

6

inspection just paid for moments before for ludicrous and made-up reasons, repeatedly; challenged Amir to a physical fight when Ohana met with Defendants to discuss some of the actions above; and intimidated witnesses and destroyed or withheld evidence in litigation their actions caused. Defendants' actions are part of a continuous course of conduct continuing to this day that has targeted Ohana and Amir over at least the last six years.

31.    As described herein, from approximately May 2015 to as recently as July 29, 2021, Defendants have continually singled out Ohana and discriminated against Ohana in violation of the Fourteenth Amendment to the United States Constitution on the basis of race, national origin, and/or religion because Amir is Jewish and/or an Israeli.

32.    Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

33.    The Defendants' conduct has demonstrated a bad faith and malicious intent to injure Ohana and Amir.

34.    The discrimination has been hard to endure, both emotionally and financially, for Amir and Ohana.

35.    That is, Defendants have enforced their interpretation of provisions of the applicable fire code and their ad hoc illegal rules regarding

inspections against Ohana, but not other similarly situated fire alarm installers, causing delays, increased costs to Ohana, reputational damages, and causing Ohana to be involved in expensive litigation.

36.   Ohana does not seek exceptions to the standards enforced by HFD Fire Prevention Bureau, but only that everyone should be held to the same standards and that those standards not be made up on an ad hoc basis.

37.   Amir and Ohana seek monetary remedies for the discrimination (and other harms inflicted upon it) in amounts in the tens of millions of dollars.

38.   However, the greater public good that may come from Defendants' intentional and malicious conduct is that Amir and Ohana's efforts to fight the discrimination have exposed HFD's complete and total incompetence in (i) reviewing building plans for a fire alarm system's compliance with the applicable fire code; and (ii) testing and inspection of fire alarm systems for applicable fire code compliance.

39.   Specifically, the employees in the HFD Fire Prevention Bureau lack the necessary education, experience, and training to perform these functions.

40.   That is, the HFD Fire Prevention Bureau is not qualified to

review building plans and perform final acceptance inspection and testing of fire alarm systems.  This circumstance has and will continue to create life-threatening risk to hundreds of thousands of persons in Honolulu whose buildings have fire alarm systems reviewed and inspected by HFD Plans Review Section.

41.    Plaintiffs seek to remedy this shocking circumstance through the issuance of an injunction until HFD Fire Prevention Bureau retains appropriately qualified personnel.

## FACTS COMMON TO ALL COUNTS

42.    Ohana is the exclusive distributor of Hochiki America ("Hochiki") fire alarm systems in the State of Hawaii.

43.    Ohana only installs Hochiki fire alarm systems.

44.    Since 2009, Ohana has installed new Hochiki fire alarm systems in approximately 100 buildings in Honolulu.

45.    Most of the Hochiki fire alarm systems installed by Ohana are in high-rise buildings.

46.    For 2021, Ohana's projected revenues from installing, servicing, testing and inspecting fire alarm systems are approximately $15 million.

47.    The State of Hawaii has adopted a fire code, which is

9

amended from time to time.

48.    The Fire Code of the City and County of Honolulu is adopted by ordinance and provided for in Chapter 20 of the Revised Ordinances of Honolulu ("Fire Code").

49.    Defendants Yasso, Caires, Lee and Malone were all assigned to the HFD Fire Prevention Bureau during the relevant times.

50.    The HFD Fire Prevention Bureau is responsible for reviewing building plans submitted to them for conformance with the Applicable fire code.

51.    With respect to the conduct alleged in the Complaint, Defendants Masuda, Yasso, Caires, Lee and Malone were acting under color of law.

52.    As set forth herein, Defendants Masuda, Yasso, Caires, Lee and Malone deprived Plaintiffs of the federal constitutional right to equal protection.

53.    Building plans involving fire alarm systems must be stamped by an electrical engineer before being submitted to the City and County of Honolulu Department of Planning and Permitting ("DPP") for review and approval.

54.    The DPP building plan reviewers are licensed engineers.

10

55.    The DPP submits certain building plans to the HFD Fire Prevention Bureau for review.

56.    The HFD Fire Prevention Bureau charges a fee for reviewing plans or other specifications that are submitted to HFD per the building code.

57.    The HFD Fire Prevention Bureau charges a plan review fee of ten percent (10%) of the building permit fee ("Plan Review Fee").

58.    According to Revised Ordinances of Honolulu § 20-1.1, the Plan Review Fees collected by HFD may be expended for, among other things, certifications and training.

59.    Ohana recently discovered that, during the relevant times, no one in the HFD Fire Prevention Bureau is or was a licensed electrical engineer.

60.    Ohana recently discovered that, during the relevant times, no one in the HFD Fire Prevention Bureau has or had a National Institute for Certification in Engineering Technologies ("NICET") certification.

61.    During the relevant times, no one in the HFD Fire Prevention Bureau has or had sufficient knowledge, training, or experience to review building plans for conformance with the applicable Fire Code.

62.    During the relevant period, the HFD Fire Prevention

11

Bureau reviewed about 300 building plans per month.

63.    As part of its business, Ohana regularly submitted building plans that were reviewed by the HFD Fire Prevention Bureau.

64.    Since 2009, Ohana has paid to HFD building plan review fees in excess of $100,000.

65.    Ohana also installed fire alarm systems based on building plans drawn by others and submitted to and approved by HFD Fire Prevention Bureau.

66.    The HFD Fire Prevention Bureau is also responsible for performing final inspection and acceptance tests of fire alarm systems installed in Honolulu.

67.    As of November 25, 2019, the Fire Alarm Systems Acceptance Test Inspection Fees ("Inspection Fees") were as follows:

     a.    1 – 100 devices or appliances:

         i.    Initial Fee:  $100

         ii.    Retest Fee:  $100

     b.    101 – 250 devices or appliances:

         i.    Initial Fee:  $250

         ii.    Retest Fee:  $250

     c.    More than 250 devices or appliances:

i.    Initial Fee:  $500

ii.    Retest Fee:  $500

68.    During the relevant times, no one in the HFD Fire Prevention Bureau has or had sufficient knowledge, training, or experience to test and inspect fire alarm systems for conformance with the applicable Fire Code.

69.    Since 2009, Ohana has paid to HFD Inspection Fees in excess of $20,000.

## LEAHI HOSPITAL PROJECT

70.    Beginning in or about May of 2015, Ohana was installing a fire alarm system at Leahi Hospital.

71.    The Leahi Hospital building plans with the fire alarm system were drafted by another contractor.

72.    The Leahi Hospital building plans with the fire alarm system were previously approved by the HFD Fire Prevention Bureau.

73.    Ohana built the fire alarm system in accordance with the approved Leahi Hospital building plans.

74.    Ohana made arrangements with the HFD Fire Prevention Bureau for a final acceptance inspection and test of the fire alarm system installed at Leahi Hospital.

75.    Defendant Lee appeared for the final acceptance test; asked for and received the Inspection Fee of $500; said the inspection was "cancelled"; and walked away.

76.    Ohana asked why the inspection was cancelled and Defendant Lee said because the job site copy of the Leahi Hospital building plans were not stamped by HFD.

77.    It was discovered that Defendant Lee had been the person at HFD Fire Prevention Bureau that reviewed and approved the Leahi Hospital building plans, but forgot to stamp the job site copy.

78.    A second final acceptance test of the fire alarm system at Leahi Hospital was scheduled.

79.    At the second final acceptance test, Defendant Lee demanded another Inspection Fee of $500.

80.    Ohana questioned why another Inspection Fee was required when there had been no prior inspection.

81.    Ohana protested and called Defendant Yasso who said that another Inspection Fee was required to be paid.

82.    Ohana paid another $500 Inspection Fee to Defendant Lee.

83.    Once he received the second $500 Inspection Fee,

50190/10/100923

Defendant Lee again said that the inspection was cancelled.

84.    Ohana inquired of Defendant Lee why the inspection was cancelled and Defendant Lee stated because there were no devices installed in the basement.

85.    Defendant Lee took this position, even though the Leahi Hospital building plans that he had approved did not have any devices in the basement.

86.    Defendant Lee's conduct caused Ohana concern.

87.    Ohana complained to Defendant Yasso about Defendant Lee's conduct.

88.    At a meeting between Ohana representatives, including Amir, and HFD employees Terry Seelig and Defendant Yasso, Ohana began discussing what it thought was improper conduct by HFD.

89.    Defendant Yasso became agitated and eventually suggested that he and Amir take the matter outside and settle it through a physical altercation.

90.    Unbeknownst to Ohana, at or about this time, Defendant Yasso was illegally sharing a government record containing information provided by Ohana to HFD about the Leahi Hospital fire alarm system to one of Ohana's competitors, James H. Ho ("Mr. Ho") of Systems Engineering

15

Group, LLC ("SEG").

91.   Defendant Yasso had no legitimate reason to share a government record containing Ohana's proprietary and trade secret information submitted to HFD regarding the Leahi Hospital fire alarm system with SEG.

92.   Defendant Yasso acted with malice in illegally sharing a government record containing Ohana's proprietary and trade secret information submitted to HFD regarding the Leahi Hospital fire alarm system with SEG.

93.   Defendants Caires and Lee were copied on the email illegally sharing a government record containing Ohana's proprietary and trade secret information submitted to HFD with SEG.

94.   Defendant Caires and Defendant Lee are complicit in Defendant Yasso's intentional and malicious conduct as they took no action to report or otherwise rectify Defendant Yasso's illegal conduct.

95.   SEG responded to Defendant Yasso with a write-up regarding the government record containing Ohana's proprietary and trade secret information submitted to HFD by Ohana regarding the Leahi Hospital fire alarm system.

96.   Defendant Yasso was pleased with SEG's response.

97.    Ohana was treated differently because of Amir's race, national origin, and/or religion.

98.    Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

99.    Defendants' actions set forth in the complaint are malicious, irrational or plainly arbitrary.

100.  The delays caused by Defendant Lee and Defendant Yasso's conduct resulted in many months of delay until HFD Fire Prevention Bureau eventually finally accepted the Leahi Hospital fire alarm system.

101.  Delay in a project causes harm to Ohana's business reputation.

102.  The delays caused by Defendant Lee and Defendant Yasso's conduct caused Ohana damages in the hundreds of thousands of dollars.

## WAIKIKI BANYAN PROJECT

103.  In May of 2017, Defendant Lee was assigned to the final inspection and testing of the Waikiki Banyan fire alarm system installed by Ohana.

104.  At the first scheduled final acceptance test, Defendant Lee

received the Inspection Fee of $500 and then immediately stated that the test had been "cancelled" because Ohana had used an old form in scheduling the final acceptance test.

105.  The form had been submitted to HFD Fire Prevention Bureau weeks prior, but Defendant Lee did not indicate that the prior version of the form would not be accepted and he did not supply Ohana with the new form that he later claimed was required.

106.  The prior version of the form had been accepted by HFD Fire Prevention Bureau just weeks before on a different fire alarm system project.

107.  Defendant Lee also informed Ohana that it would be required to revise its building plans to call out 520 Hz audibility and meet the 520 Hz audibility standard, even though it was not called out on the building plans previously approved by HFD Fire Prevention Bureau.

108.  Up until this point in May of 2017, HFD Fire Prevention Bureau had routinely approved building plans that utilized fire alarm systems that did not have 520 Hz audibility and passed these buildings at the final inspection and testing.

109. On or about May 17, 2017, Ohana discussed with Defendants Masuda, Yasso, and Lee that HFD Fire Prevention Bureau never

18

before required any fire alarm installer to meet 520 Hz audibility requirements, and asked when the decision to begin requiring 520 Hz audibility was made, Defendant Masuda responded "today".

110. At or about this same time, Ohana discovered that Defendant Lee had made anti-Semitic statements about Amir to one of Ohana's competitors, including calling Amir a "shyster." Defendant Lee also told these persons that Amir is a "crook" and that he does not like Amir.

111. Amir requested that HFD remove Defendant Lee from all Ohana projects.

112. On or about May 22, 2017, Defendant Masuda indicated that HFD would have someone other than Defendant Lee at the next final inspection and testing of the fire alarm system at the Waikiki Banyan.

113. Unbeknownst to Ohana, in late May and early June of 2017, Defendant Yasso again illegally shared Ohana's proprietary and trade secret information submitted to HFD Fire Prevention Bureau by emailing it to Mr. Ho of SEG. Defendant Lee was copied on certain of the emails.

114. In a meeting at the Waikiki Banyan, Defendant Yasso became agitated, began yelling, and became aggressive with Amir when Amir complained about the action of the HFD Fire Prevention Bureau.

115. Defendant Yasso acted with malice in illegally sharing of a

19

government record containing Ohana's proprietary and trade secret information submitted to HFD regarding the Waikiki Banyan fire alarm system with SEG.

116.  Defendant Lee was copied on at least some of the emails illegally sharing a government record containing Ohana's proprietary and trade secret information with SEG.

117.  Defendant Lee is complicit in Defendant Yasso's intentional and malicious conduct as he took no action to report or otherwise rectify Defendant Yasso's illegal conduct.

118.  Upon information and belief, HFD Fire Prevention Bureau either hid or destroyed the communications between Defendant Yasso and SEG regarding the Waikiki Banyan fire alarm system project.

119.  HFD was subpoenaed by Ohana in an arbitration related to the Waikiki Banyan fire alarm system to produce such communications on May 17, 2021, but failed or refused to turn over the May and June 2017 emails between HFD and SEG relating to the Waikiki Banyan fire alarm system project.

120.  Under Defendant City & County's records retention policy, the May and June 2017 emails between HFD and SEG relating to the Waikiki Banyan fire alarm system project should have been preserved.

121.   Ohana only obtained the May and June 2017 emails between HFD and SEG relating to the Waikiki Banyan fire alarm system project in response to a subpoena to SEG in a separate State Circuit Court matter on or about May 19, 2021.

122.   Ohana's Waikiki Banyan fire alarm system project was the first fire alarm system project where HFD Fire Prevention Bureau required that building plans be amended and that 520 Hz audibility be met where HFD had previously approved plans that did not specifically call out the 520 Hz audibility requirement.

123.   Just weeks after requiring Ohana to revise building plans and install equipment to meet the 520 Hz audibility, HFD Fire Prevention Bureau gave final acceptance to a fire alarm system installed by a different fire alarm installer that did not have 520 Hz audibility.

124.   Upon information and belief, Ohana is the only fire alarm system installer that the HFD Fire Prevention Bureau required to (i) amend building plans previously approved by HFD Fire Prevention Bureau without the 520 Hz audibility and (ii) to install 520 Hz audibility equipment.

125.   HFD Fire Prevention Bureau's requirement that Ohana do so, but no one else, was malicious, irrational, or plainly arbitrary.

126.  Ohana was treated differently because of Amir's race, national origin, and/or religion.

127.  Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

128.  Defendants' actions set forth in the complaint are malicious, irrational or plainly arbitrary.

129.  As a result of requiring that Ohana amend the building plans for the Waikiki Banyan fire alarm system and install 520 Hz audibility equipment, the completion of the project cost significantly more; took significantly longer, as the final acceptance of the fire alarm system was not received until July of 2018; caused over  $1,000,000 of uncompensated damages to Ohana; subjected Ohana to a delay damage claim, among others, from the Waikiki Banyan in an amount in excess of $165,000; and resulted in the incurrence of approximately $150,000 in attorneys' fees incurred in an arbitration with the Waikiki Banyan.

130.  HFD Fire Prevention Bureau did not impose a similar burden on any other fire alarm installer.

131.  HFD Fire Prevention Bureau employee Ricardo Zapata eventually approved the fire alarm system at the Waikiki Banyan in July for 2018.

132.  Just hours after signing the approval of the fire alarm system at the Waikiki Banyan, Mr. Zapata contacted Ohana to indicate that Defendant Caires said that the final acceptance was being revoked because there were no fireman's phone jacks installed at the Waikiki Banyan.

133.  The Waikiki Banyan fire alarm system plans had been approved by HFD Fire Prevention Bureau without fireman's phone jacks.

134.  This was consistent with HFD Fire Prevention Bureau's long-standing prior guidance to electrical engineers and fire alarm installers that HFD does not use fireman's phone jacks and that, accordingly, the HFD Fire Prevention Bureau does not require they be installed.

135.  Ohana contacted Defendant Caires' superior about these issues, and Ohana was informed that the final acceptance would not be revoked.

136.  In addition, in connection with litigation between Ohana and the Waikiki Banyan, upon information and belief, HFD directly or indirectly intimidated a witness, former HFD employee Douglas Bennett, that Ohana subpoenaed for deposition testimony.

50190/10/100923

## MOTT-SMITH PROJECT

137.   In or about May of 2014, Ohana completed a fire alarm system installation project at the Mott-Smith Laniloa condominium project ("Mott-Smith").

138.   The HFD Fire Prevention Bureau reviewed the As-Built plans and performed a final inspection and acceptance test on May 26, 2014, approving the fire alarm system as installed as meeting the applicable Fire Code.

139.   Later in 2016, after Ohana installed an emergency generator, the HFD Fire Prevention Bureau performed another inspection of the fire alarm system, which again passed.

140.   The DPP records reflect that Ohana was the fire alarm contractor for Mott-Smith, as of 2014.

141.   The two inspections of the Mott-Smith in HFD's records reflected that Ohana was the contractor and that the fire alarm system had been inspected and accepted twice.

142.   Nevertheless, in October of 2017, Defendant Lee falsely and with malice told the Mott-Smith that its fire alarm system was never inspected for a final acceptance test by HFD Fire Prevention Bureau.

143. Defendant Lee erroneously informed the Mott-Smith association of apartment owners (the "Mott-Smith AOAO") that its fire alarm system was impaired and that a fire watch had to be implemented.

144. Defendant Lee's statements resulted in the Mott-Smith AOAO filing suit against Ohana, seeking millions of dollars in damages, which suit remains pending.

145. Ohana was treated differently because of Amir's race, national origin, and/or religion.

146. Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

147. Defendants' actions set forth in the complaint are malicious, irrational or plainly arbitrary.

148. Ohana did not discover Defendant Lee's conduct with respect to Mott-Smith until April of 2021 through document discovery in the Mott-Smith AOAO litigation.

## THE CHATEAU WAIKIKI PROJECT

149. HFD Fire Prevention Bureau approved the fire alarm system on the plans for the Chateau Waikiki, which did not include a requirement for fireman's phone jacks.

50190/10/100923

150.  The Chateau Waikiki plans were not drawn by Ohana, but an electrical engineering company called Douglas Engineering Pacific, Inc. ("DEP").

151.  The owner selected Ohana to install the fire alarm system provided for in the plans.

152.  Ohana had not previously worked on a fire alarm system installation project with DEP.

153.  For a period of approximately 8 years prior to the Chateau Waikiki Project, HFD Plans Review Section informed electrical engineers that it did not want or require the installation of fireman's phone jacks, even though ostensibly required by the applicable Fire Code.

154.  The Chateau Waikiki project was completed according to the approved building plans, which did not include fireman's phone jacks.

155.  Now that Ohana was involved in one of DEP's projects, in order to obtain final approval and acceptance of the fire alarm systems, Defendant Caires insisted on the installation of fireman's phone jacks, which would have added many tens of thousands of dollars to the cost of the Chateau Waikiki Project.

156.  HFD Plans Review Section had not insisted on the installation of fireman's phone jacks on any of DEP's other fire alarm

installation projects in the previous eight years.

157.   Ohana was treated differently because of Amir's race, national origin, and/or religion.

158.   Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

159.   Defendants' actions set forth in the complaint are malicious, irrational or plainly arbitrary.

160.   The ultimate resolution resulted in increased costs to Ohana and approximately a year of delay, which was harmful to Ohana's reputation with DEP, the owner, and potential customers.

## COUNTRY CLUB PLAZA PROJECT

161.   Ohana was the fire alarm installer for the Country Club Plaza project.

162.   In or about September of 2020, Defendant Malone from HFD Fire Prevention Bureau began inspecting fire alarm systems installed by Ohana.

163.   Ohana had installed a fire alarm system at Country Club Plaza and scheduled a final acceptance test with HFD Fire Prevention Bureau.

164.  Defendant Malone was the inspector for the Country Club Plaza final acceptance test.

165.  Defendant Malone scheduled the final inspection and acceptance test for each building over multiple days, when the inspection for each building could have and should have concluded in one day.

166.  Ohana inquired of HFD Fire Prevention Bureau why the final inspections were being spread over multiple days.

167.  Defendant Malone began requesting that Ohana do things that other fire alarm installers are not asked to do, including:

  a.  Radio test reports for each building, even though each building was a similar design;

  b.  100% testing of all units; and

  c.  Higher percentage of pull station tests.

168.  Ohana was treated differently because of Amir's race, national origin, and/or religion.

169.  Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

170.  Defendants' actions set forth in the complaint are malicious, irrational or plainly arbitrary.

50190/10/100923

171.  Defendant Malone's subjecting of Ohana to additional burdens that other fire alarm system installers are not subjected to caused delay to Ohana's projects, delayed Ohana's receipt of payments, resulted in additional unnecessary costs, harmed Ohana's reputation in the community and subjected Ohana to potential lawsuits.

172.  As a result of Defendant Malone's conduct, Ohana began to inquire of the competence and qualifications of HFD Fire Prevention Bureau to inspect plans and conduct inspections.  HFD Fire Prevention Bureau refused to respond on this matter.

## HALEKULUANUI PROJECT

173.  Ohana was the fire alarm installer for the Halekuluanui project.

174.  In or about April of 2021, Defendant Malone scheduled the final inspection and acceptance test for the Halekuluanui Project over multiple half days, when the inspection could have and should have concluded in one day.

175.  Ohana complained to the HFD Fire Prevention Bureau about the final inspection being spread over multiple half days.

176.  According to Defendant Malone's later comments, Ohana's inquiry to HFD Fire Prevention Bureau got him in trouble.

50190/10/100923

177.  Defendant Malone again requested inspection of 100% of the units, which other fire alarm installers are not required to do.

178.  Ohana was treated differently because of Amir's race, national origin, and/or religion.

179.  Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

180.  Defendants' actions set forth in the complaint are malicious, irrational or plainly arbitrary.

181.  Defendant Malone's subjecting of Ohana to additional burdens that other fire alarm system installers are not subjected to caused delay to Ohana's projects, delayed Ohana's receipt of payments, resulted in additional unnecessary costs, harmed Ohana's reputation in the community and subjected Ohana to potential lawsuits.

## 1010 WILDER PROJECT

182.  Ohana was the fire alarm installer for the 1010 Wilder project.

183.  After Ohana completed installation of the fire alarm system according to the plans previously approved by HFD Fire Prevention Bureau, Defendant Malone was assigned to perform the final inspection and

30

acceptance test.

184.   Defendant Malone scheduled the final inspection and acceptance test over a three day period, when it could have and should have concluded in one day.  Defendant Malone eventually decided to schedule it for two days instead of three.

185.   On the first day of the final inspection and acceptance, Defendant Malone informed Amir that Ohana's prior inquiry as to multiple day inspections got him in trouble and now he was going to "go by the book."

186.   Defendant Malone indicated that he had a problem with Amir.

187.   Defendant Malone required that 100% of the devices be checked during the inspection, which is not required of other similarly situated fire alarm installers.

188.   Defendant Malone also required that Ohana's electrician/RME be present during the inspection, which is not required of other similarly situated fire alarm installers.  Nor had this requirement been imposed on Ohana before.

189.   Defendant Malone also required that approximately 3 speakers, 3 strobes, 3 pull stations, 3 sounder boards and 3 smoke detectors (15 devices) per floor be removed, tested, and reinstalled, which is not

required of other similarly situated fire alarm installers.  Normally, HFD Fire

Prevention Bureau would only spot test 1 or 2 devices every other floor.

190.   Then, Defendant Malone refused to pass 1010 Wilder's fire

alarm system based on an erroneous opinion that notification devices were

required on the lanais, even though HFD Fire Prevention Bureau approved

plans without notification devices on the lanais.

191.   Neither the applicable Fire Code nor the building code

require notification devices on the lanais.

192.   HFD Fire Prevention Bureau has not required other fire

alarm installers to install notification devices on lanais at over one hundred

other condominiums.

193.   In fact, in June of 2021, after Defendant Malone refused to

pass the 1010 Wilder project, HFD Fire Prevention Bureau inspected a

condominium with a fire alarm system installed by a contractor other than

Ohana and did not require that 100% of the units be tested and did not even

check for audibility of notification devices on the condominiums lanais, much

less require actual notification devices on the lanais.

194.  Defendant Malone's subjecting of Ohana to additional

burdens that other fire alarm system installers are not subjected to causes

delay to Ohana's projects, delays Ohana's receipt of payments, results in

additional unnecessary costs, harms Ohana's reputation in the community and subjects Ohana to potential lawsuits.

195.   Shortly thereafter, Amir made a complaint to HFD that he was being discriminated against by Defendant Malone based on his nationality and religion.

196.   After this complaint was made, HFD began retaliating by refusing to reconsider Defendant Malone's erroneous opinion, despite being provided with evidence by the electrical engineer for the project and by Ohana that the applicable codes do not require notification devices on lanais.

197.   HFD Fire Prevention Bureau continues to refuse to pass the final inspection and acceptance test for 1010 Wilder for lack of notification devices on the lanais, when it is not even checking audibility on lanais in other condominiums that have been inspected by HFD Fire Prevention Bureau after it took the position on 1010 Wilder.

198.   When asked by Ohana to identify what other condominium buildings in Honolulu were required to place notification devices on lanais, HFD responded that it was prohibited from disclosing that information pursuant to Hawaii Revised Statutes chapter 92-F.

199.   The HFD has on more than one occasion illegally disclosed Ohana's project-specific detailed information to Ohana's competitor, SEG,

33

but refuses to provide Ohana with non-confidential information that would demonstrate that Ohana is being treated differently than other fire alarm installers.

200.  On July 2, 2021, Ohana reported HFD and Defendant Yasso's illegal conduct in violating Hawaii Revised Statutes chapter 92-F to the State of Hawaii, Department of the Attorney General.

201.  Ohana provided a copy of this report to HFD.

202.  Ohana was treated differently because of Amir's race, national origin, and/or religion.

203.  Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

204.  Defendants' actions set forth in the complaint are malicious, irrational or plainly arbitrary.

## DEFENDANT CAIRES ESCALATES THE RETALIATION IN AN ATTEMPT TO GREATLY HARM OR DESTROY OHANA'S BUSINESS

205.  In an escalation of the retaliation, on July 23, 2021, Defendant Caires contacted Hochiki asking that he be provided with "information on which Hochiki fire alarm panel models, initiation devices and notification devices are intended for installation in a high rise occupancy."

34

206. Hochiki responded and Defendant Caires made further inquiries of Hochiki on July 29, 2021 that contained incorrect information and appeared to contained veiled threats.

207. Defendant Caires has no legitimate basis for directly contacting Hochiki.

208. Hochiki has not received any similar request for information from any other fire department in the entire United States.

209. The electrical engineer on a project specifies the appropriate fire alarm system equipment for use in a high rise.

210. Defendant Caires' emails to Hochiki were intended to intimidate or harass Hochiki to make it more difficult for Ohana to operate.

211. Defendant Caires' emails were designed to interfere with Ohana's business relationship with Hochiki.

212. Defendant Caires' emails were designed to harass or intimidate Ohana.

213. Because Ohana exclusively installs Hochiki fire alarm systems, Defendant Caires' emails are a threat to Ohana that Defendant Caires is trying to harm Ohana's multi-million dollar business by either disrupting Ohana's relationship with Hochiki or by illegally threatening to prohibit the use of Hochiki products in high-rise buildings in Honolulu.

214.  Ohana was treated differently because of Amir's race, national origin, and/or religion.

215.  Irrespective of Amir's race, national origin, and/or religion, Defendants intentionally treated Ohana differently than other similarly situated fire alarm installers without a rational basis.

216.  Defendants' actions set forth in the complaint are malicious, irrational or plainly arbitrary.

### Failure to Adopt Rules, Policies or Procedures

217.  HRS § 132-2 grants the fire chiefs of each county the power to adopt rules, including with respect to the inspection of property.

218.  HFD has not adopted any rules with respect to the inspection of property, including final inspection and acceptance testing of fire alarm systems.

219.  HFD has not adopted any policies or procedures for final inspection and acceptance testing of fire alarm systems. Ohana has repeatedly asked that it be treated the same as other fire alarm system installers in the conduct of final inspection and acceptance testing.

220. Fair and impartial treatment could have been accomplished by rules, policies or procedures adopted by Defendant City & County.

221.  Instead, the HFD Fire Prevention Bureau has acted and continues to act arbitrarily, capriciously, and/or maliciously by *ad hoc* illegal rules enforced differently based on the whim, caprice or malice of the particular HFD Fire Prevention Bureau inspector.

## FAILURE TO ADEQUATELY TRAIN AND SUPERVISE

222.  Defendant City & County has a duty to adequately supervise and train its employees and to take reasonable steps to protect the public from foreseeable harm cause by its employees.

223.  Defendant City & County employed, during the relevant time, in the HFD Fire Prevention Bureau a number of persons that lack the education, experience, and training necessary to carry out their functions in (a) reviewing plans for compliance with the applicable Fire Code; and (b) performing inspection and acceptance testing of fire alarm systems for compliance with the applicable Fire Code.

224.  Defendant City & County employed, during the relevant time, supervisors in the HFD Fire Prevention Bureau persons that lacked the education, experience, and training necessary to carry out their functions in (a) reviewing plans for compliance with the applicable Fire Code; and (b) performing inspection and acceptance testing of fire alarm systems for compliance with the applicable Fire Code.

225.  Defendant City & County failed to adequately train the employees in the HFD Fire Prevention Bureau.

226.  The failure of Defendant City & County to adequately train the supervisors and employees in the HFD Fire Prevention Bureau demonstrates deliberate indifference towards the rights of Ohana.  This failure also demonstrates a reckless disregard for the life and safety of hundreds of thousands of Honolulu's residents that are directly affected by the work of the HFD Fire Prevention Bureau.

227.  Defendant City & County knows that fire alarm system plans are required to be stamped by an electrical engineer.  Defendant City & County knows that none of the employees of HFD Fire Prevention Bureau are engineers and none even have NICET certifications.

228.  Despite the availability of funds, Defendant City & County provides no material training and does not require that HFD Fire Prevention Bureau employees obtain necessary degrees or certifications.

## COUNT I – (42 U.S.C. § 1983 – Fourteenth Amendment Violation of Equal Protection) (Against Defendants Masuda, Yasso, Caires, Lee and Malone)

229.  Paragraphs 1 through 228 above are realleged and incorporated.

50190/10/100923

230.  Defendants Masuda, Yasso, Caires, Lee and Malone knowingly, intentionally, maliciously, and with reckless disregard for Plaintiffs' constitutional rights under the Fourteenth Amendment of the Constitution of the United States, selectively enforced provisions of the applicable Fire Code and illegal rules against Ohana, but not against others who were similarly situated fire alarm installers.

231.  Defendants Masuda, Yasso, Caires, Lee and Malone's actions constituted a continuing course of conduct that continues to this day, with the last overt act occurring on July 29, 2021.

232.  There is no rational basis for the difference in treatment between Ohana and others who are similarly situated fire alarm installers.

233.  Instead, the difference in treatment is based on Amir being Jewish and/or Israeli, or that Defendants Masuda, Yasso, Caires, Lee and Malone simply were motivated by animus "to get" Amir and Ohana by means of selective enforcement.

234.  By discriminating against Plaintiffs, without any rational basis, Defendants Yasso, Caires, Lee and Malone's selective enforcement of the law against Ohana constitutes a violation of Plaintiffs' clearly established constitutional right to equal protection of the law under the Fourteenth Amendment.

235.  Ohana has been damaged in the amounts to be proven at or before trial.

## COUNT II – (42 U.S.C. § 1983 – Fourteenth Amendment Violation of Equal Protection – Supervisory Liability)

### (Against Defendants Masuda, Yasso, and Caires)

236.  Paragraphs 1 through 235 above are realleged and incorporated.

237.  At the relevant times, Defendant Masuda was acting in the capacity of a supervisor of Defendants Yasso, Caires, and Lee.

238.  At the relevant times, Defendant Yasso was acting in the capacity of a supervisor of Defendants Caires and Lee.

239.  At the relevant times, Defendant Caires was acting in the capacity of a supervisor of Defendant Lee and Defendant Malone.

240.  In addition to their liability for their own wrongful acts, Defendant Masuda, Defendant Yasso and Defendant Caires are liable for the acts of those HFD Fire Prevention Bureau employees they supervised.

241.  Defendant Masuda, Defendant Yasso, and Defendant Caires failed to provide proper training and supervision to their subordinates at HFD Fire Prevention Bureau.

242.  Defendant Masuda, Defendant Yasso and Defendant Caires were aware of their subordinates' unequal and unconstitutional

40

treatment of Ohana and were personally involved in such treatment, by either encouraging such treatment or acquiescing in it.

243.   Despite being aware that the applicable Fire Code and illegal rules were being enforced selectively with respect to Ohana, Defendant Masuda, Defendant Yasso and Defendant Caires failed to enact any policies or procedures to ensure that the applicable Fire Code was enforced consistently for all similarly situated persons.

244.   Instead, Defendant Masuda, Defendant Yasso and Defendant Caires allowed for a custom and practice of selective enforcement of the applicable Fire Code and illegal rules against Ohana to thrive, essentially constituting an informal policy of discrimination against Ohana.

245.   Defendant Masuda, Defendant Yasso and Defendant Caires' conduct showed a reckless or callous indifference to the rights of Ohana.

246.   Ohana has been damaged in the amounts to be proven at or before trial.

247.   Defendant Masuda, Defendant Yasso and Defendant Caires acted knowingly, willfully, with malicious intent, and in reckless disregard or callous indifference to Plaintiffs' constitutional rights, justifying an award of punitive damages.

## COUNT III – (42 U.S.C. § 1983 – Fourteenth Amendment Violation of Equal Protection –Municipal Liability – Policy, Practice or Custom) (Against Defendant City & County of Honolulu)

248.  Paragraphs 1 through 247 above are realleged and incorporated.

249.  As stated above, the applicable Fire Code and illegal rules were selectively applied to Ohana, and the difference in the application of the Fire Code to Ohana was intentional and unreasonable.

250.  As evidenced by the continuing course of conduct of Defendants, which lasted at least six years and continues as of the date of the filing of this complaint, Defendant City & County, specifically HFD, has maintained a policy of permitting, condoning, encouraging and/or covering up Defendants Yasso, Caires, Lee and Malone's selective enforcement of the law against Ohana, but not against others similarly situated fire alarm installers.

251.  Defendant City & County's policy is pervasive, widespread, and so longstanding and prevalent as to rise to the level of official policy.

252.  Defendant City & County's policy violates the Equal Protection Clause of the Fourteenth Amendment because it irrationally and impermissibly allows discrimination against persons that HFD Plans Section dislikes for personal reasons.

50190/10/100923

253.   Defendant City & County knew or should have known that because of its longstanding adherence to its policy or custom, it encouraged and emboldened Defendants Yasso, Caires, Lee and Malone's selective enforcement of the law against Ohana in violation of the constitution.

254.   Ohana has been damaged in the amounts to be proven at or before trial.

### COUNT IV – (42 U.S.C. § 1983 – Fourteenth Amendment Violation of Equal Protection –Municipal Liability – Failure to Train and Supervise) (Against Defendant City & County of Honolulu)

255.   Paragraphs 1 through 254 above are realleged and incorporated.

256.   Defendant City & County was obligated to enact affirmative policies and procedures to prevent constitutional harms from occurring.

257.   Defendant City & County was obligated to sufficiently train and supervise HFD employees to protect the public from constitutional harms.

258.   Defendant City & County failed to enact any policies or procedures to prohibit selective enforcement of the law in the absence of a rational basis.

50190/10/100923

259.  Despite repeated demands from Ohana that HFD enforce the laws evenhandedly, Defendant City & County failed to adopt any policies or procedures or provide any supervision or training to address the ongoing and foreseeable misconduct and constitutional violations, and therefore, tacitly approved of the misconduct.

260.  Defendant City & County's failure to train, supervise and discipline employees of the HFD Plans Review Section was a cause of the deprivation of Ohana's constitutional rights.

261.  Ohana has been damaged in the amounts to be proven at or before trial.

## COUNT V – (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
### (Against Defendants Masuda, Yasso, Caires, Lee and Malone)

262.  Paragraphs 1 through 261 above are realleged and incorporated.

263.  The conduct of Defendants Masuda, Yasso, Caires, Lee and Malone in discriminating against Plaintiffs was intentional.

264.  At a minimum, the conduct of Defendants Masuda, Yasso, Caires, Lee and Malone in discriminating against Plaintiffs was reckless.

265.  The conduct of Defendants Masuda, Yasso, Caires, Lee and Malone in discriminating against Plaintiffs was outrageous.

266. Discrimination by government employee(s) based on Amir's race, national origin, and/or religion, or just because such employee(s) feels malice towards Amir and/or Ohana is despicable and should be condemned by society.

267. Defendants Masuda, Yasso, Caires, Lee and Malone's outrageous conduct caused Amir severe emotional distress, because such actions were causing damages to Ohana that affected its business, its employees, and Amir and his family.

268. The emotional distress suffered by Amir includes, but is not limited to, anger, disappointment, anxiety, worry, sleeplessness, and nausea.

269. The emotional distress suffered by Amir has been ongoing from at least 2015, and will continue into the future.

270. Amir has suffered and will continue to suffer damages in an amount to be proven at trial.

271. Defendants Masuda, Yasso, Caires, Lee and Malone have acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or with conscious indifference to the consequences, justifying an award of punitive damages in addition to Plaintiffs' actual damages.

45

**COUNT VI – (CIVIL CONSPIRACY) (Against Defendants Masuda, Yasso, Caires, Lee and Malone)**

272.   Paragraphs 1 through 271 above are realleged and incorporated.

273.   Defendants Masuda, Yasso, Caires and Lee acted in concert to accomplish the unlawful denial of Plaintiffs' constitutional right to equal protection of the law.

274.   Defendant Caires and/or Defendants Lee and Malone acted in concert to accomplish the unlawful denial of Plaintiffs' constitutional right to equal protection of the law.

275.   Plaintiffs suffered and continued to suffer damages in an amount to be proven at trial.

276.   Defendants Masuda, Yasso, Caires, Lee and Malone have acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or with conscious indifference to the consequences, justifying an award of punitive damages in addition to Plaintiffs' actual damages.

**COUNT VII (FRAUD – PLAN REVIEW FEES)**
**(Against Defendant City & County)**

277.   Paragraphs 1 through 276 above are realleged and incorporated.

50190/10/100923

278.  Each time Defendant City & County charged building plan review fees, Defendant City & County of Honolulu represented to Ohana that its employees in the HFD Fire Prevention Bureau were qualified to review building plans for conformance with applicable Fire Code.

279.  Alternatively, by failing to disclose that its employees in the HFD Fire Prevention Bureau were not qualified to review building plans for conformance with applicable Fire Code, each time it charged Ohana building Plan Review Fees, it is as if Defendant City & County represented that its employees in the HFD Fire Prevention Bureau were qualified to review building plans for conformance with applicable Fire Code.

280.  Defendant City & County's representation that its employees in the HFD Fire Prevention Bureau were qualified to review building plans for conformance with applicable Fire Code was false.

281.  Defendant City & County's knew its representation that its employees in the HFD Fire Prevention Bureau were qualified to review building plans for conformance with applicable Fire Code was false.

282.  Defendant City & County made these false representations in contemplation that Ohana and others would rely on them.

283.  Ohana relied on Defendant City & County's false representations and paid Defendant City & County over $100,000 in Plan Review Fees since 2009.

284.  Ohana has been damaged in amounts to be proven at or before trial.

## COUNT VIII (FRAUD – INSPECTION FEES)
### (Against Defendant City & County)

285.  Paragraphs 1 through 284 above are realleged and incorporated.

286.  Each time Defendant City & County charged Ohana Inspection Fees, Defendant City & County of Honolulu represented to Ohana that its employees in the HFD Fire Prevention Bureau were qualified to perform final review and acceptance testing of fire alarm systems for conformance with applicable Fire Code

287.  Alternatively, by failing to disclose that its employees in the HFD Fire Prevention Bureau were not qualified to perform final review and acceptance testing of fire alarm systems for conformance with applicable Fire Code each time it received Inspection Fees, it is as if Defendant City & County represented that its employees in the HFD Fire Prevention Bureau were qualified to perform final review and acceptance testing of fire alarm systems for conformance with applicable Fire Code.

288.  Defendant City & County's representations that its employees in the HFD Fire Prevention Bureau were qualified to perform final review and acceptance testing of fire alarm systems was false.

289.  Defendant City & County's knew its representations that its employees in the HFD Fire Prevention Bureau were qualified to perform final review and acceptance testing of fire alarm systems.

290.  Defendant City & County made these false representations in contemplation that Ohana and others would rely on them.

291.  Ohana relied on Defendant City & County's false representations and paid Defendant City & County over $20,000 in Inspection Fees since 2009.

292.  Ohana has been damaged in amounts to be proven at or before trial.

### COUNT IX (NEGLIGENT MISREPRESENTATION– Plan Review Fees) (Against Defendant City & County)

293.  Paragraphs 1 through 292 above are realleged and incorporated.

294.  Each time it charged Ohana building plan review fees, Defendant City & County of Honolulu supplied false information to Ohana that its employees in the HFD Fire Prevention Bureau were qualified to review building plans for conformance with applicable Fire Code as a result

49

of the failure to exercise reasonable care or competence in communicating the information.

295.   Ohana was the person for whom such information was supplied.

296.   Ohana suffered a loss each time the misinformation was supplied.

297.   Ohana relied on the misinformation supplied by Defendant City & County of Honolulu.

298.   Ohana has been damaged in amounts to be proven at or before trial.

## COUNT X (NEGLIGENT MISREPRESENTATION – INSPECTION FEES) (Against Defendant City & County)

299.   Paragraphs 1 through 298 above are realleged and incorporated.

300.   Each time it charged Ohana Inspection Fees, Defendant City & County of Honolulu supplied false information to Ohana that its employees in the HFD Fire Prevention Bureau were qualified to perform final review and acceptance testing of fire alarm systems as a result of the failure to exercise reasonable care or competence in communicating the information.

50190/10/100923

301.  Ohana was the person for whom such information was supplied.

302.  Ohana suffered a loss each time the misinformation was supplied.

303.  Ohana relied on the misinformation supplied by Defendant City & County of Honolulu.

304.  Ohana has been damaged in amounts to be proven at or before trial.

## COUNT XI (INJUNCTIVE RELIEF)
### (Against Defendant City & County of Honolulu)

305.  Paragraphs 1 through 304 above are realleged and incorporated.

306.  Defendants have repeatedly and in a continuing course of conduct violated Ohana's rights under the Fourteenth Amendment to the United States Constitution.

307.  Ohana is entitled to the issuance of a permanent injunction restraining Defendants from continuing to violate Ohana's rights under the Fourteenth Amendment to the United States Constitution.

308.  An injunction should also be issued requiring Defendant City & County to implement policies, practices, procedures, training, and other measures to prevent selective enforcement of the laws.

51

## COUNT XII (INJUNCTIVE RELIEF)
### (Against Defendant City & County of Honolulu)

309. Paragraphs 1 through 308 above are realleged and incorporated.

310. Defendant City & County employs persons in the HFD Fire Prevention Bureau that lack sufficient education, training, and experience to review building plans for Fire Code compliance and to inspect fire alarm systems for Fire Code compliance.

311. A permanent injunction should issue prohibiting HFD Fire Prevention Bureau employees from (a) collecting fees and reviewing fire alarm system building plans unless they are a licensed electrical engineer; and (b) collecting fees and conducting final inspection and acceptance testing of fire alarm systems unless they have a NICET level II certification.

WHEREFORE, the Plaintiffs pray for judgment as follows:

A.     That the Court enter judgment on all Counts against Defendants, jointly and severally, as appropriate, for general, special and compensatory damages in amounts to be proven at or before trial, including for punitive damages as allowed by law;

B.     That an injunction be issued: (i) restraining Defendants from continuing to violate Ohana's rights under the Fourteenth Amendment to the United States Constitution; (ii) requiring Defendant City & County of

Honolulu to implement policies, practices, procedures, training, and other measures to prevent selective enforcement of the laws; and (iii) prohibiting HFD Fire Prevention Bureau employees from (a) collecting fees and reviewing fire alarm system building plans unless they are a licensed electrical engineer; and (b) collecting fees and conducting final inspection and acceptance testing of fire alarm systems unless they have a NICET level II certification;

      C.    That Plaintiffs be awarded prejudgment interest;

      D.    That Plaintiffs be awarded their costs and attorneys' fees; and

      E.    That the Court order such other and further relief as this Court deems just and proper.

      DATED:  Honolulu, Hawaii, <u>August 16, 2021</u>.

<u>/s/ Christopher J. Muzzi</u>
CHRISTOPHER J. MUZZI
Attorney for Plaintiffs
OHANA CONTROL SYSTEMS, INC.
and MICHAEL AMIR BOROCHOV

50190/10/100923

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OHANA CONTROL SYSTEMS, INC. and MICHAEL AMIR BOROCHOV,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF HONOLULU; WAYNE K. MASUDA; SHELDON YASSO; TIM CAIRES; JEFFREY K. LEE; DAVID MALONE; and DOE DEFENDANTS 1 - 20,<br><br>        Defendants. | Case No.:  _____<br><br><br>**DEMAND FOR JURY TRIAL** |

## <u>DEMAND FOR JURY TRIAL</u>

COME NOW Plaintiffs OHANA CONTROL SYSTEMS, INC. and MICHAEL AMIR BOROCHOV, by and through their undersigned counsel, hereby demands trial by jury of all issues so triable herein.

DATED:  Honolulu, Hawaii, <u>August 16, 2021</u>.

*/s/ Christopher J. Muzzi*
CHRISTOPHER J. MUZZI
Attorney for Plaintiffs
OHANA CONTROL SYSTEMS, INC. and MICHAEL AMIR BOROCHOV
