IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OHANA CONTROL SYSTEMS, INC. and MICHAEL AMIR BOROCHOV, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF HONOLULU; WAYNE K. MASUDA; SHELDON YASSO; TIM CAIRES; JEFFEREY K. LEE; DAVID MALONE; and DOE DEFENDANTS 1–20, <br><br> Defendants. | CIVIL NO. 21-00345 JAO-KJM <br><br> ORDER GRANTING (1) THE CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS COMPLAINT AND (2) DEFENDANTS WAYNE K. MASUDA, SHELDON YASSO, TIM CAIRES, JEFFREY K. LEE, AND DAVID MALONE'S MOTION TO DISMISS COMPLAINT |

**ORDER GRANTING (1) THE CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS COMPLAINT AND (2) DEFENDANTS WAYNE K. MASUDA, SHELDON YASSO, TIM CAIRES, JEFFREY K. LEE, AND DAVID MALONE'S MOTION TO DISMISS COMPLAINT**

This action stems from the Honolulu Fire Department ("HFD") Fire Prevention Bureau's ("FPB") purportedly selective enforcement of the Fire Code and other policies against Plaintiff Ohana Control Systems, Inc. ("Ohana"), and improper disclosure of governmental records containing Ohana's trade secrets to Ohana's competitors, in violation of the Equal Protection Clause of the Fourteenth Amendment.  Defendants the City and County of Honolulu ("the City"), Wayne Masuda ("Masuda"), Sheldon Yasso ("Yasso"), Tim Caires ("Caires"), Jeffrey Lee

("Lee"), and David Malone ("Malone")[1] (collectively, "Defendants") move to dismiss the Complaint.  ECF Nos. 14, 15.  For the following reasons, the Court GRANTS the motions.

## BACKGROUND

### I.   Factual History

Ohana is the exclusive distributor of Hochiki America fire alarm systems in Hawai'i and has installed these systems in approximately 100 buildings in Honolulu since 2009.  ECF No. 1 ("Compl.") ¶¶ 42, 44.  According to Plaintiffs Ohana and Michael Amir Borochov ("Amir"), Ohana's President (collectively, "Plaintiffs"), from approximately May 2015 to July 2021, Defendants demanded that Ohana meet requirements not required of other alarm installers to pass inspections.  *Id.* ¶ 30.  Plaintiffs aver that Defendants singled out Ohana and discriminated against it on the basis of Amir's Jewish/Israeli background, and/or that Ohana was treated differently than similarly situated fire alarm installers without a rational basis.  *Id.* ¶¶ 31–32.

The Individual Defendants were employed by HFD at all relevant times.  *Id.* ¶¶ 9–13.  Masuda was an HFD Battalion Chief who supervised Yasso, Caires, Lee,

---

[1]  Masuda, Yasso, Caires, Lee, and Malone will collectively be referred to as the "Individual Defendants."  Masuda, Yasso, and Caires will collectively be referred to as the "Supervisory Defendants."  The Individual Defendants are sued in their individual capacities.  ECF No. ¶ 17.

2

and Malone.  *Id.* ¶ 14.  Yasso was an FPB Captain who supervised Caires and Lee.

*Id.* ¶ 15.  Caires became Captain after Yasso and supervised Malone and Lee.  *Id.* ¶ 16.

### A.    Leahi Hospital Project

During a May 2015 fire alarm system installation at Leahi Hospital, Lee

allegedly twice cancelled final acceptance test inspections after collecting the

$500.00 inspection fee.  *Id.* ¶¶ 75, 79, 82–83.  The first time, he claimed it was

because the job site copy of the building plans was not stamped by HFD and

Plaintiffs later discovered that Lee forgot to stamp the plans.  *Id.* ¶¶ 76–77.  Lee

purportedly cancelled the second inspection because there were no devices in the

basement, even though the plans did not include devices there.  *Id.* ¶¶ 84–85.

Ohana complained to Yasso, and at a meeting that included Amir and Yasso,

Ohana discussed the conduct it deemed improper.  *Id.* ¶¶ 81, 87–89.  Plaintiffs

claim that Yasso became agitated and wanted to settle the issue by physical means.

*Id.* ¶ 89.

Plaintiffs later learned that Yasso allegedly emailed information supplied by

Ohana about the fire alarm system — including proprietary and trade secrets — to

James Ho of Systems Engineering Group, LLC ("SEG"), a competitor.  *Id.* ¶¶ 90–93.  Caires and Lee were copied on the email.  *Id.* ¶ 93.

**B.     Waikiki Banyan Project**

Lee was assigned to the final inspection and testing of the Waikiki Banyan fire alarm system in May 2017.  *Id.* ¶ 103.  Lee collected the $500.00 inspection fee then cancelled the testing because Ohana used an old form for scheduling.  *Id.* ¶ 104.  He also informed Ohana that it must revise its building plans to call out 520 Hz audibility and meet the relevant standard notwithstanding that the issue was not flagged on building plans approved by FPB.  *Id.* ¶ 107.

At a May 17, 2017 meeting regarding this issue with Masuda, Yasso, and Lee, Ohana asked when the 520 Hz audibility requirement was imposed, and Masuda responded "today."  *Id.* ¶ 109.  Around this time, Ohana learned that Lee allegedly made anti-Semitic and other disparaging statements about Amir to a competitor.  *Id.* ¶ 110.  Amir requested Lee's removal from Ohana's projects and Masuda indicated that someone else would conduct the final inspection and testing. *Id.* ¶¶ 111–12.  Plaintiffs aver that Yasso again shared information with SEG and copied Lee on some of the emails.  *Id.* ¶ 113.  Yasso also supposedly became agitated at a meeting and was aggressive with Amir after Amir complained about FPB's actions.  *Id.* ¶ 114.

In July 2018, FPB employee Ricardo Zapata approved the fire alarm system, but then contacted Ohana hours later to inform it that Caires revoked the final acceptance because no firefighter's phone jacks were installed.  *Id.* ¶¶ 131–32.

4

FPB had approved the fire alarm system plans without firefighter's phone jacks. *Id.* ¶ 133.  When Ohana contacted Caires's superior about these issues, it was informed that the final approval would not be revoked.  *Id.* ¶ 135.

### C.   Mott-Smith Project

FPB approved a fire alarm system installed by Ohana at the Mott-Smith Laniloa condominium ("Mott-Smith") on May 26, 2014, then again in 2016 after Ohana installed an emergency generator.  *Id.* ¶¶ 137–39.  In October 2017, Lee purportedly told Mott-Smith that its fire alarm system was never inspected for a final acceptance test and informed the association of apartment owners ("AOAO") that the system was impaired and that a fire watch had to be implemented.  *Id.* ¶¶ 142–43.  The AOAO sued Ohana for millions of dollars and the lawsuit remains pending.  *Id.* ¶ 144.

### D.   Chateau Waikiki Project

As he did with the Waikiki Banyan project, Caires insisted on the installation of firefighter's phone jacks, even though the plans were approved without the jacks, and HFD's Plans Review Section had not required it previously. *Id.* ¶¶ 149, 153–56.

### E.   Country Club Plaza Project

In September 2020, Malone began inspecting fire alarm systems installed by Ohana at Country Club Plaza.  *Id.* ¶¶ 161–62.  He scheduled the final inspection

and acceptance test over multiple days when Ohana believes it should have concluded in one day.  *Id.* ¶ 165.  Plaintiffs allege that Malone imposed additional testing requirements not required of other fire alarm installers, such as radio test reports for each building, 100% testing of all units, and a higher percentage of pull station tests.  *Id.* ¶ 167.

### F.   Halekuluanui Project

Malone scheduled a final inspection and acceptance test for the Halekuluanui project, extending over multiple half days, in April 2021.  *Id.* ¶ 174. Ohana complained to FPB about the extended inspection and Malone later claimed that he got in trouble.  *Id.* ¶¶ 175–76.  Plaintiffs claim that Malone requested that 100% of the units be inspected, a requirement not imposed on other fire alarm installers.  *Id.* ¶ 177.

### G.   1010 Wilder Project

At 1010 Wilder, Malone scheduled yet another multi-day final inspection and acceptance test.  *Id.* ¶¶ 183–84.  Malone purportedly told Amir that Ohana's inquiries about the multi-day inspections got him in trouble and that he would therefore proceed "by the book."  *Id.* ¶ 185.  Malone also allegedly said he had a problem with Amir.  *Id.* ¶ 186.  During the inspection, Malone imposed the following requirements that are not imposed upon other fire alarm installers: checking 100% of devices; presence of the electrician/RME, never before required;

and removal, testing, and reinstallation of three speakers, three strobes, three pull

stations, three sounder boards, and three smoke detectors per floor, when FPB

would ordinarily spot test one or two devices on every other floor.  *Id.* ¶¶ 187–89.

The system failed the inspection due to Malone's opinion that notification devices

were required on the lanais, despite the fact that FPB approved the plans without

those devices, and that neither the Fire nor Building Codes require these devices.

*Id.* ¶ 190.  In June 2021, following Malone's refusal to pass the system, FPB did

not impose these requirements on a different fire alarm installer at a different

condominium.  *Id.* ¶ 193.  FPB has yet to pass 1010 Wilder's fire alarm system.

*Id.* ¶ 197.

## II.   Procedural History

Plaintiffs commenced this action on August 16, 2021, asserting the

following claims:

- Count I:  Fourteenth Amendment equal protection violation under 42 U.S.C. § 1983 against the Individual Defendants;

- Count II:  Fourteenth Amendment equal protection violation — supervisory liability — under § 1983 against the Supervisory Defendants;

- Counts III and IV:  Fourteenth Amendment equal protection violation — municipal liability and failure to train and supervise — under § 1983 against the City;

- Count V:  intentional infliction of emotional distress ("IIED") against the Individual Defendants;

- Count VI:  civil conspiracy against the Individual Defendants;

- Counts VII and VIII:  fraud — plan review fees and inspection fees — against the City;

- Counts IX and X:  negligent misrepresentation — plan review fees and inspection fees — against the City; and

- Counts XI and XII:  injunctive relief against the City.

Compl. at 39–53.

On September 8, 2021, the City and the Individual Defendants filed motions to dismiss the Complaint.  ECF Nos. 14–15.  Plaintiffs filed oppositions on October 8, 2021.  ECF Nos. 21–22.  On October 15, 2021, Defendants filed replies.  ECF Nos. 23–24.

The Court held a hearing on November 19, 2021.  ECF No. 25.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to

defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

A claim may be dismissed at this stage on the basis that it is untimely. However, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010) (citation omitted). In fact, "'[a] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## DISCUSSION

## I.    Individual Defendants' Motion To Dismiss

The Individual Defendants move for dismissal of the constitutional claims on qualified immunity grounds and for failure to state an IIED claim. ECF No. 15-1.

### A.    Statute Of Limitations

The Individual Defendants argue that Masuda, Yasso, and Lee are entitled to qualified immunity because the allegations against them, having occurred prior to August 16, 2019 (two years prior to the commencement of this action), are barred

10

by the statute of limitations.  *Id.* at 12–15; ECF No. 24 at 6–8.  The Individual

Defendants also point out that the only timely allegations pertaining to Caires and

Malone are from 2020 and 2021.  ECF No. 15-1 at 13–14.  To the extent Plaintiffs'

claims are time-barred, they can be dismissed on that basis, and the Court need not

reach qualified immunity.  In other words, a defendant is not entitled to qualified

immunity merely because a claim is time-barred or otherwise fails.

Plaintiffs do not challenge the request to dismiss allegations related to Lee's

conduct at the Leahi Hospital and Waikiki Banyan projects, which occurred in

2015 and 2017, respectively.  ECF No. 21 at 13–14.  With the exception of these

allegations, Plaintiffs contend that they only learned of Lee's, Masuda's and

Yasso's misconduct in 2021, so under the discovery rule and the continuing

violations doctrine, their claims are not time-barred.  *Id.* at 13–15.  But at the

hearing, Plaintiffs' counsel conceded that the continuing violations doctrine does

not apply under the circumstances and that certain allegations are time-barred but

were included for context.[2]  Counsel also argued that not all conduct occurring

outside the statute of limitations is time-barred because they did not realize until

---

[2]  The continuing violations doctrine is an exception to the discovery rule and
permits "a plaintiff to seek relief for events outside of the limitations period."  *Bird
v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (internal quotation
marks and citation omitted).  What little remains of the doctrine is inapplicable
here.

recently — within the statute of limitations — that the conduct amounted to a constitutional violation.

### 1.    § 1983 Claims

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (internal quotation marks and citation omitted). Hawaii's statute of limitations for personal injury actions is two years. *See* Hawaiʻi Revised Statutes ("HRS") § 657-7. However, federal law governs the accrual of civil rights claims, which occurs "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Klein*, 865 F.3d at 1278 (internal quotation marks and citations omitted). Under this discovery rule, a plaintiff must "be diligent in discovering the critical facts of the case." *Id.* (citation omitted).

### a.    Lee And Yasso

Under these principles, Plaintiffs' claims relating to Lee's and Yasso's conduct at the Waikiki Banyan and Leahi Hospital projects are clearly barred by the two-year statute of limitations because the alleged misconduct occurred in 2015 and 2017, and Plaintiffs have been aware the misconduct since then. The Court is not persuaded that the purported discovery of the nature/severity of the injury within the applicable statute of limitations can spare the allegations. The discovery

rule requires Plaintiffs to be diligent in discovering the critical facts of the case and it is undisputed that they were troubled by Lee's and Yasso's conduct when it occurred.  Indeed, they complained about it and attended meetings to address their concerns.  Compl. ¶¶ 75–89, 104–12, 114.  A reasonable inquiry should have revealed the basis for their current claims — that Ohana was treated differently than similarly situated fire alarm installers.  Because no set of facts could establish the timeliness of the claims, they are DISMISSED with prejudice.  In any amended pleading, no claims may be founded upon Yasso's or Lee's conduct related to the Waikiki Banyan and Leahi Hospital projects.

Less obvious is the timeliness of the claims relating to Lee's conduct with Mott-Smith in 2017 and Yasso's emails to SEG in 2015 and 2017.   Although Lee allegedly told the Mott-Smith AOAO in 2017 that its fire alarm system had never been inspected for a final acceptance test and that it was impaired, *id.* ¶¶ 142–43, Plaintiffs claim to have only learned about this in April 2021 through the Mott-Smith litigation.  *Id.* ¶ 148.  Insofar as Plaintiffs could potentially assert facts establishing the timeliness of claims pertaining to Lee's Mott-Smith project conduct, the Court declines to dismiss on statute of limitations grounds.

Plaintiffs also claim to have discovered for the first time in 2021 that Yasso emailed SEG.  However, even accepting this as true, as outlined in Section I.B. below, the allegations pertaining to the emails do not alone support a Fourteenth

Amendment claim so there is no basis to maintain any claims against Yasso.

Moreover, because Yasso left HFD in 2017, *id.* ¶ 10, claims based on acts

occurring during his tenure are time-barred, and Plaintiffs have not identified other

recently discovered conduct to support claims against him.  The Court therefore

DISMISSES with prejudice all claims against Yasso.

### b.    Masuda

The Individual Defendants argue that claims against Masuda should be

dismissed as untimely because his alleged conduct occurred in 2017 and Plaintiffs

were aware of it.  ECF No. 15-1 at 13; ECF No. 24 at 7–8.  Plaintiffs counter that

they did not discover that Masuda was treating Ohana differently than similarly

situated fire alarm installers until a deposition in 2021 pertaining to Waikiki

Banyan project litigation.  ECF No. 21 at 14.  However, the allegations in the

Complaint reveal that Plaintiffs were aware, as of May 2017, of Masuda's conduct

that forms the basis of their constitutional claims.  Compl. ¶¶ 109, 112.  As earlier

discussed, Plaintiffs knew enough to trigger their duty to exercise diligence in

discovering the critical facts of their case.  Based on their allegations, Plaintiffs

were unquestionably aware of and took issue with Lee's conduct — so much so

that they wanted Lee removed from Ohana's projects — which they addressed on

multiple occasions with Masuda.  Consequently, to the extent Plaintiffs' claims are

based on Masuda's 2017 behavior, or any other conduct occurring before August 16, 2019 that Plaintiffs were aware of, they are DISMISSED with prejudice.

Supervisory liability claims for subordinates' conduct occurring within the applicable statute of limitations are timely.[3]

### c.      Caires

The Individual Defendants correctly note that timely allegations against Caires are limited to those concerning communications with Hochiki.  ECF No. 15-1 at 13; Compl. ¶¶ 205–13.  The only other allegations regarding Caires relate to the Waikiki Banyan project, which Plaintiffs were aware of since 2017.  Compl. ¶¶ 132, 135.  As a result, claims based on Caires's Waikiki Banyan project acts are barred by the statute of limitations and DISMISSED with prejudice.

Plaintiffs also claim misconduct by Caires related to the Chateau Waikiki project, but have not included any dates.  If the purported misconduct occurred prior to August 16, 2019, claims predicated on such misconduct are time-barred.

### 2.      IIED Claim

For the reasons stated in the preceding section, the time-barred allegations likewise cannot support Plaintiffs' IIED claim.  The same two-year statute of

---

[3]  The Individual Defendants conceded at the hearing that some of Masuda's conduct is timely, but they contend that Masuda is entitled to qualified immunity. The Court reiterates that qualified immunity should be addressed after the pleadings are set.

limitations applies to IIED claims.[4]  *See* HRS § 657–7; *Hale v. Haw. Publ'ns, Inc.*, 468 F. Supp. 2d 1210, 1232 (D. Haw. 2006).

**B.   Count I:  Fourteenth Amendment Equal Protection Violation Under § 1983 Against The Individual Defendants**

The Individual Defendants also assert, in connection with their qualified immunity argument, that Plaintiffs fail to state an equal protection claim under a class-based or a class-of-one theory.  ECF No. 15-1 at 21–24.  As Plaintiffs confirmed at the hearing, they are proceeding on a class-of-one theory, under which they contend that their allegations that Defendants treated them differently than other similarly situated fire alarm installers withstand dismissal.  ECF No. 21 at 17–22.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *Sampson v. County of Los Angeles ex rel. L.A. Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1022 (9th Cir. 2020) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (some internal quotation marks

---

[4]  "Pursuant to Hawaii's 'discovery rule,' a cause of action does not 'accrue,' and the statute of limitations in § 657-7 does not begin to run, until the plaintiff knew or should have known of the defendant's negligence."  *Aana v. Pioneer Hi-Bred Int'l, Inc.*, 965 F. Supp. 2d 1157, 1179 (D. Haw. 2013) (quoting *Hays v. City & County of Honolulu*, 81 Hawaiʻi 391, 393, 917 P.2d 718, 720 (1996)).

omitted).  In a "class of one" equal protection claim, the plaintiff must allege that "[he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (some internal quotation marks and citations omitted).  The Ninth Circuit has "recognized that the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government *action*."  *Gerhart v. Lake County*, 637 F.3d 1013, 1023 (9th Cir. 2011) (footnote omitted).

"The class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'"  *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (quoting *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 603 (2008)).  The Supreme Court has explained:

> In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Enquist*, 553 U.S. at 603; *see Towrey*, 672 F.3d at 660 (quoting *id.*).

Plaintiffs argue that they sufficiently allege that laws were selectively enforced against them and not other similarly situated fire alarm installers.[5]  ECF No. 21 at 20 (citing Compl. ¶ 250).  They insist that it can be reasonably inferred that other fire alarm system installers are similarly situated "and should be fungible for purposes of the installation of fire alarm systems."  *Id.*  The Complaint merely alleges that the Individual Defendants selectively enforced provisions of the Fire Code and illegal rules against Ohana, but not against other similarly situated fire alarm installers, and there was no rational basis for doing so.  Compl. ¶¶ 230, 232, 234.  These allegations do not adequately state a class-of-one equal protection claim.

Courts within the Ninth Circuit have "'enforced the similarly-situated requirement with particular strictness when the plaintiff invokes the class-of-one theory.'"  *Leen v. Thomas*, No. 2:12-cv-01627-TLN-DMC, 2020 WL 1433143, at *6 (E.D. Cal. Mar. 24, 2020) (quoting *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016)) (brackets and other citations omitted).  "'Class-of-one

---

[5]  Plaintiffs rely on *N Group LLC v. Hawaiʻi County Liquor Commission*, 681 F. Supp. 2d 1209, 1230 (D. Haw. 2009), for the proposition that general allegations regarding similarly situated individuals suffice.  ECF No. 21 at 20.  However, the case relied upon by *N Group* for that pleading standard was overruled.  *See N Group*, 681 F. Supp. 2d at 1230 (citing *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003)); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (holding "that the pleading standard set out in *Iqbal* supersedes the 'general allegation' deemed sufficient in *DeMuria*").

plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'"  *Id.* (quoting *Warkentine*, 152 F. Supp. 3d at 1294); *see also Hood Canal Sand & Gravel, LLC v. Brady*, 129 F. Supp. 3d 1118, 1125 (W.D. Wash. 2015) ("'[Class of one plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects.'" (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)) (brackets in original)).

Plaintiffs' bare, conclusory allegations do not meet the applicable standard for stating a claim under a class-of-one theory.  Indeed, this theory cannot apply unless Plaintiffs demonstrate that the Individual Defendants were engaged in non-discretionary action.  Moreover, assuming the theory applies, conclusory statements and formulaic recitations that similarly situated fire alarm installers[6] were treated differently without a rational basis cannot carry the day.  Plaintiffs must identify *specific* similarly situated fire alarm installers, show how they were treated differently under similar circumstances, and offer plausible facts showing why no rational basis existed for doing so.  *See El Dorado Cmty. Serv. Ctr. v. County of Los Angeles*, 730 F. App'x 407, 407–08 (9th Cir. 2018) (affirming

---

[6]  In a footnote in their Opposition, Plaintiffs identify the fire alarm installers in Honolulu, and argue that Defendants know who they are.  ECF No. 21 at 19 n.2. Arguments in briefing cannot save deficiencies in the Complaint and the fact that Defendants may know the identifies of the installers does not absolve Plaintiffs of their obligation to satisfy pleading requirements.

dismissal of the plaintiff's class-of-one equal protection claim on grounds that the plaintiff offered one conclusory statement that it was treated differently from similarly situated medical service providers without identifying specific similarly situated medical service providers, attempting to show that the county had treated them differently, or pleading sufficient facts to show a lack of rational basis for the different treatment); *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004) ("It is therefore imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class.").

For these reasons, Plaintiffs' equal protection claim (Count I) is DISMISSED.  Because it appears that amendment could cure the deficiencies outlined above, Plaintiffs are granted leave to amend.

### C.   Count II:  Fourteenth Amendment Equal Protection Violation — Supervisory Liability — Under § 1983 Against The Supervisory Defendants

The Individual Defendants argue that the Supervisory Defendants are entitled qualified immunity because Plaintiffs fail to establish a constitutional violation, supervisory liability cannot be based on time-barred conduct, Plaintiffs fail to plausibly allege that the Supervisory Defendants violated a clearly established right, and Plaintiffs' allegations fail to state a claim.  ECF No. 15-1 at 26–28.  As earlier explained, the Court focuses on whether Plaintiffs state a claim.

The Court has already determined that claims against Yasso are dismissed as time-barred.

A defendant may be subject to supervisory liability under § 1983 if he or she is personally involved in the constitutional deprivation or there exists "'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation omitted). This requires a plaintiff to "'show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.'" *Id.* (citation omitted). Causal connection can be established by alleging that the supervisor set "'in motion a series of acts by others'" or "'knowingly refus[ed] to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Id.* at 1207–08 (some brackets and citations omitted). A supervisor can face liability in his or her individual capacity for: (1) "his [or her] own culpable action or inaction in the training, supervision, or control of his [or her] subordinates"; (2) "acquiescence in the constitutional deprivation"; or (3) "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (internal quotation marks and citation omitted).

Here, Plaintiffs allege that Masuda supervised Caires and Lee and Caires supervised Lee and Malone, and that in their supervisory roles, Masuda and Caires

are liable for the acts of their subordinates.  Compl. ¶¶ 237, 239–40.  In pertinent part, Plaintiffs also allege that Masuda and Caires (1) failed to provide proper training and supervision, (2) were personally involved in or encouraged or acquiesced in their subordinates' unconstitutional conduct, and (3) engaged in conduct showing a reckless or callous indifference to Ohana.  *Id.* ¶¶ 241–42, 245.

These allegations, even when coupled with other allegations scattered throughout the Complaint, are conclusory and non-specific, and fail to demonstrate that Caires and Masuda should be subject to supervisory liability.  As with their other claims, Plaintiffs merely recite the elements of a claim.  Hence, the Court DISMISSES the supervisory liability claim (Count II) but allows Plaintiffs to amend.

### D.    Count VI:  Civil Conspiracy Against The Individual Defendants

The Individual Defendants contend that they are entitled to qualified immunity because Plaintiffs have not adequately stated a claim and it is not clearly established that the Individual Defendants can commit civil conspiracy in light of the intracorporate-conspiracy doctrine.  ECF No. 15-1 at 29–30.  At the hearing, Plaintiffs' counsel explained that Plaintiffs are asserting a common law civil conspiracy claim.

In Hawaiʻi, a civil conspiracy claim is derivative.  *See Chung v. McCabe Hamilton & Renny Co.*, 109 Hawaiʻi 520, 530–31, 536, 128 P.3d 833, 843–44, 849

(2006).  "[A] conspiracy is a combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawaiʻi 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999) (brackets, internal quotation marks, and citations omitted), *superseded by statute on other grounds as stated in Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Hawaiʻi 77, 148 P.3d 1179 (2006).  Civil conspiracy consists of three elements:  "(1) the formation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy, i.e., an actionable claim based upon deceit; and (3) damage."  *Dowkin v. Honolulu Police Dep't*, Civil No. 10-00087 SOM/RLP, 2012 WL 3012643, at *7 (D. Haw. July 23, 2012) (internal quotation marks and citation omitted).

Plaintiffs allege that the Individual Defendants — (1) Masuda, Yasso, Caires, and Lee, and (2) Caires, Lee, and Malone — acted in concert to deprive them of their equal protection rights.  Compl. ¶¶ 273–74.  Plaintiffs' allegations are devoid of essential facts and they have not even recited the requisite elements of a conspiracy claim.  The claim is therefore DISMISSED, though Plaintiffs are given

leave to amend.[7]  Any amended claim may not be predicated upon time-barred allegations.

### E.   Count V:  IIED Claim Against The Individual Defendants

The Individual Defendants argue that most of the allegations forming the basis of this claim are time-barred and the timely allegations are not "outrageous." ECF No. 15-1 at 28.

An IIED claim consists of the following elements:  "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  *Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 106–07, 73 P.3d 46, 60–61 (2003) (citations omitted). "The terms 'unreasonable' and 'outrageous' have been used interchangeably and have been construed to mean 'without just cause or excuse and beyond all bounds of decency.'"  *Lee v. Aiu*, 85 Hawai'i 19, 34 n.12, 936 P.2d 655, 670 n.12 (1997) (citation omitted).  The Hawai'i Supreme Court, relying on the Restatement

---

[7]  The Court declines to address the intracorporate-conspiracy doctrine at this time because the conspiracy claim is dismissed with leave to amend.  Under the doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."  *Ziglar v. Abbasi*, 582 U.S.__, 137 S. Ct. 1843, 1867 (2017) (citation omitted).  Because Plaintiffs currently sue the Individual Defendants in their personal capacities, the doctrine is inapplicable.  However, future applicability will be determined by any amended pleading.

(Second) of Torts, has described "outrageous" conduct rendering actionable an

IIED claim as follows:

> "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.*, 76 Hawai'i 454, 465 n.12, 879 P.2d 1037,

1048 n.12 (1994) (quoting Restatement (Second) of Torts § 46 cmt. d).

The Complaint alleges that the Individual Defendants acted intentionally and

recklessly; their conduct was outrageous; the racial and religious discrimination

against Amir was despicable; and Amir suffered severe emotional distress as a

result, including anger, disappointment, anxiety, worry, sleeplessness, and nausea.

Compl. ¶¶ 263–68.  These allegations are nothing more than a threadbare recital of

the elements of an IIED claim.  Accordingly, this claim is DISMISSED.  It

appearing that amendment could cure the pleading deficiencies, the Court grants leave to amend.[8]  Any amendment may not be based on time-barred allegations.

In sum, the Court dismisses all claims against the Individual Defendants with leave to amend, except for the underlying allegations that have been dismissed with prejudice as untimely — Lee's and Yasso's conduct related to the Leahi Hospital and Waikiki Banyan projects, Masuda's 2017 conduct (and any conduct prior to August 16, 2019 of which Plaintiffs were aware), Caires's Waikiki Banyan project acts and any acts prior to August 16, 2019 related to the Chateau Waikiki project.  Plaintiffs may not add new parties or claims without seeking leave to amend.

## II.   The City's Motion To Dismiss

The City seeks dismissal of all claims against it on multiple grounds.  The Court addresses each claim in turn.

### A.   Counts III And IV:  Fourteenth Amendment Equal Protection Violations — Municipal Liability — Under § 1983

Plaintiffs claim that the City is liable for allowing the Individual Defendants to engage in the conduct complained of in this litigation.  They rely on two theories of liability:  policy, practice or custom, and failure to train and supervise.

---

[8]  Because IIED claims are generally predicated on other underlying conduct, and Plaintiffs have indicated that they are proceeding on a class-of-one theory, they should avoid class-based allegations in any amendment.

### 1.     Policy, Practice, Or Custom (Count III)

"Liability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (some internal quotation marks omitted) (citing *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002)).  A policy or custom may be shown in three ways:  (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."  *Id.* (some internal quotation marks and citation omitted).  A "municipal policy 'may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'"  *Id.* (citation omitted); *see Connick v. Thompson*, 563 U.S. 51, 61 (2011) (including as an example of official municipal policy "practices so persistent and widespread as to practically have the force of law" (citations omitted)).  Isolated or sporadic incidents are insufficient; "[l]iability for improper

27

custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

For a municipality to be liable, its custom or policy must also "evince a 'deliberate indifference' to the constitutional right and are the 'moving force behind the constitutional violation.'" *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010) (citation omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). A policy is a moving force if it is "closely related to the ultimate injury" and a plaintiff must "establish 'that the injury would have been avoided' had proper policies been implemented." *Long v. County of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006) (some internal quotation marks and citations omitted). Where, as here, Plaintiffs claim that the City allowed or encouraged the Individual Defendants to inflict the alleged injuries, not that the City directly inflicted injuries itself, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee[s]." *Brown*, 520 U.S. at 405 (citations omitted).

The municipal liability claim consists of the following allegations: the Fire Code and illegal rules were selectively applied to Ohana; the City has maintained a

28

continuing policy for at least six years that permits, condones, encourages, and/or covers up the Individual Defendant's selective enforcement of laws against Ohana; the policy is so pervasive and longstanding that it constitutes official policy; the policy violates the Equal Protection Clause by impermissibly and irrationally allowing discrimination against individuals for personal reasons; and the City knew or should have known that its longstanding adherence to the policy emboldened the Individual Defendants.  Compl. ¶¶ 249–53.  These bare allegations do not state a claim.  Mere recitation of the elements of a cause of action does not suffice, *see AE v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Iqbal* and *Twombly* to *Monell*[9] claims), and Plaintiffs fail to do even that much, as they have not alleged that the policy evinced a deliberate indifference to Plaintiffs' constitutional rights and that it was the moving force behind the constitutional violation.  The Court therefore DISMISSES Count III.  There is a possibility that Plaintiffs can address the deficiencies through amendment, so they are given leave to amend this claim.[10]

---

[9]  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

[10]  The Court does not address all possible bases for dismissal but in amending, Plaintiffs must comply with all pleading requirements.

## 2.     Failure To Train And Supervise (Count IV)

Plaintiffs relatedly allege that the City failed to train and supervise the Individual Defendants.  They aver that the City:  (1) was obligated to enact affirmative policies and procedures to prevent constitutional violations; (2) was obligated to sufficiently train and supervise HFD employees to protect the public from constitutional injury; (3) failed to enact policies or procedures prohibiting selective enforcement of the laws; (4) failed to adopt policies or procedures or provide supervision or training to address constitutional violations — notwithstanding Ohana's repeated demands that laws be enforced equally — thereby approving the misconduct; and (5) caused the deprivation of Ohana's constitutional rights by failing to train, supervise, and discipline employees of HFD's Plans Review Section.  Compl. ¶¶ 256–60.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Connick*, 563 U.S. at 61.  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Id.* (citation omitted).  To succeed on such a claim, the failure to train employees "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'"  *Id.* (brackets and citation omitted).  A city may be deliberately

indifferent if city policymakers elect to retain a training program when they have "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Id.* (citation omitted). This "policy of inaction" is effectively "a decision by the city itself to violate the Constitution." *Id.* at 61–62 (internal quotation marks and citation omitted).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citation omitted). Deliberate indifference may be established by "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'" *Id.* (citation omitted). Absent notice of deficiencies in a course of training, "decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

In the present case, Plaintiffs provide no facts regarding the training received by the Individual Defendants and/or how it was deficient. In a single paragraph in their general factual allegations, Plaintiffs state that the City provides "no material training and does not require that HFD Fire Prevention Bureau employees obtain necessary degrees or certifications." Compl. ¶ 228. But this alone cannot save this claim when it is devoid of essential allegations regarding the City's continued

adherence to training or practices (or lack thereof) despite knowing that the

training (or lack of training) was causing or failing to prevent constitutional

violations.  Although Plaintiffs *conclude* that the City acted with deliberate

indifference, they have offered no facts demonstrating how or why this is so.  The

Court therefore DISMISSES this claim (Count IV).  Because amendment could

potentially cure the deficiencies, Plaintiffs are granted leave to amend.

### B.     Counts VII And VIII:  Fraud — Plan Review Fees And Inspection Fees

The City argues that the fraud claims are subject to dismissal because:  (1)

Plaintiffs have failed to state a claim; (2) Plaintiffs have not satisfied FRCP 9(b);

(3) the City is not the proper defendant and Plaintiffs have not asserted respondeat

superior; and (4) the claims may be barred by the applicable statute of limitations.

ECF No. 14-1 at 18–21.

In Hawaiʻi, a plaintiff claiming fraud or intentional misrepresentation must

establish that "'(1) false representations were made by defendants, (2) with

knowledge of their falsity (or without knowledge of their truth or falsity), (3) in

contemplation of plaintiff's reliance upon these false representations, and (4)

plaintiff did rely upon them.'"  *Shoppe v. Gucci Am., Inc.*, 94 Hawaiʻi 368, 386, 14

P.3d 1049, 1067 (2000) (citations omitted).  A plaintiff must also "show that he

suffered substantial pecuniary damage."  *Haw.'s Thousand Friends v. Anderson*,

70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989).  Plaintiffs' allegations must be

pled with particularity pursuant to FRCP 9(b).  *See Smallwood v. NCsoft Corp.*,

730 F. Supp. 2d 1213, 1232–33 (D. Haw. 2010).  FRCP 9(b) requires a party

alleging fraud or mistake to "state with particularity the circumstances constituting

fraud or mistake."  Fed. R. Civ. P. 9(b); *see In re GlenFed, Inc. Sec. Litig.*, 42 F.3d

1541, 1547–48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15

U.S.C. § 78u–4.  FRCP 9(b)'s purpose is threefold:

> (1) to provide defendants with adequate notice to allow them to
> defend the charge and deter plaintiffs from the filing of
> complaints "as a pretext for the discovery of unknown wrongs";
> (2) to protect those whose reputation would be harmed as a result
> of being subject to fraud charges; and (3) to "prohibit plaintiffs
> from unilaterally imposing upon the court, the parties and society
> enormous social and economic costs absent some factual basis."

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (brackets and

citation omitted).

"Averments of fraud must be accompanied by 'the who, what, when, where,

and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1106 (9th Cir. 2003) (citation omitted); *see Cafasso ex rel. United States v.

Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  A plaintiff

must offer something greater "than the neutral facts necessary to identify the

transaction."  *Vess*, 317 F.3d at 1106 (internal quotation marks and citation

omitted).  He or she must identify "what is false or misleading about a statement,

and why it is false."  *Id.* (internal quotation marks and citation omitted).  "[T]he

circumstances constituting the alleged fraud [must] be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (some internal quotation marks and citation omitted).

Plaintiffs allege that the City supplied false information — that employees of FPB were qualified to review building plans or perform final review and acceptance testing of fire alarm systems for conformance with the Fire Code — each time it charged Ohana plan review fees and inspection fees.  Compl. ¶¶ 278, 286.  Alternatively, Plaintiffs assert that the City's failure to disclose that FPB employees were unqualified to review building plans or perform final review and acceptance testing of fire alarm systems for conformance with the Fire Code constituted a representation that FPB employees were qualified to do so.  *Id.* ¶¶ 279, 287.  According to Plaintiffs, the representations were false, the City knew they were false, they made the false representations in contemplation that Ohana would rely on them, Ohana relied on the representations and suffered damages as a result.  *Id.* ¶¶ 280–84, 288–92.

Plaintiffs offer insufficient factual allegations to state fraud claims and their allegations fall well short of satisfying FRCP 9(b)'s particularity requirement. Plaintiffs' allegations are presented in the most generalized and conclusory terms. And fundamentally, it is unclear how the act of charging fees constitutes a false

representation and assuming it could, how the City itself made the representations. Plaintiffs clarify that these claims rest on the theory that by collecting fees, the City *impliedly* represented that the employees were qualified to review plans and inspect fire alarm systems.  ECF No. 22 at 23–24.  But Plaintiffs' allegations concerning the false representations are contradictory, which further undermines the claims.  Plaintiffs on one hand assert that the City affirmatively made misrepresentations concerning employee qualifications.  On the other hand, Plaintiffs assert that the City's failure to disclose its employees' lack of qualifications constitutes a misrepresentation.[11]  At the hearing, Plaintiffs' counsel argued that the City made a representation by charging and accepting fees, and that to the extent the representation is not affirmative, it is a negligent misrepresentation.  However, Plaintiffs' allegations are not pled in this manner.

For these reasons, the fraud claims (Count VII and VIII) are DISMISSED. Because the identified deficiencies could potentially be cured by amendment, the Court grants leave to amend these claims.

---

[11]  Even if Plaintiffs allegations were not contradictory, Plaintiffs' ability to rely on a failure to disclose is questionable under the circumstances.  *See Goran Pleho, LLC v. Lacy*, 144 Hawaiʻi 224, 239, 439 P.3d 176, 191 (2019) ("Where there is a duty to exercise reasonable care to disclose a matter in question [such as when the duty arises from an attorney's fiduciary role], failure to disclose the matter is considered a false representation for purposes of the fraud analysis." (citation omitted)).

35

### C.     Counts IX And X:  Negligent Misrepresentation — Plan Review Fees And Inspection Fees

The City argues that the negligent misrepresentation claims are subject to dismissal because:  (1) Plaintiffs have failed to state a claim; (2) the City is not the proper defendant and Plaintiffs have not asserted respondeat superior; and (3) the claims may be barred by the applicable statute of limitations.

Negligent misrepresentation under Hawaiʻi law requires the following elements:  "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation."  *Santiago v. Tanaka*, 137 Hawaiʻi 137, 153–54, 366 P.3d 612, 628–29 (2016) (internal quotation marks and citations omitted).

Plaintiffs allege that the City supplied false information — that employees of FPB were qualified to review building plans or perform final review and acceptance testing of fire alarm systems for conformance with the Fire Code — each time it charged Ohana plan review fees and inspection fees, and that Ohana relied on the misrepresentations and suffered damages as a result.  Compl. ¶¶ 294–98, 300–04.  These allegations are conclusory and deficient.  As pointed out earlier, is unclear how charging fees, without more, amounts to the presentation of false information.  Plaintiffs merely offer a threadbare recital of the elements of a

36

negligent misrepresentation claim, which is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678.

Plaintiffs argue that their incorporation by reference of all preceding allegations saves their claim. ECF No. 22 at 26. It is neither the Court nor Defendants' responsibility to scour the Complaint to ascertain whether any other allegations might pertain to this (or any other) claim such that the allegations, taken together, adequately state a claim. *See Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 969 (D. Haw. 2019); *Villela v. Nevada*, No. 2:15-cv-826-LDG-VCF, 2015 WL 4570297, at *2 (D. Nev. May 6, 2015), *adopted by*, 2017 WL 1293978 (D. Nev. Mar. 10, 2017) ("It is not the court's job to laboriously search the Complaint for factual assertions that could, in theory, be used to support one legal claim or another."); *cf. Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994) ("District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits — not only because the rules of procedure place the burden on the litigants, but also because their time is scarce.").

As presented, Plaintiffs' negligent misrepresentation claims (Counts IX and X) are deficiently pled and are therefore DISMISSED. Because it is possible that they could be saved by amendment, Plaintiffs are granted leave to amend.

### D.   Counts XI And XII:  Injunctive Relief

The City seeks dismissal of the injunctive relief claims because all other claims against it should be dismissed and because injunctive relief is not a standalone claim.  ECF No. 14-1 at 24.  Plaintiffs counter that these claims should not be dismissed on their merits and that they were identified to provide notice to the City.  ECF No. 22 at 28.

It is well settled that "injunctive relief" is not a standalone cause of action.  *See Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1132 (D. Haw. 2011) (citing cases).  Rather, "[i]njunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action."  *Id.*  Insofar as Plaintiffs cannot sustain standalone claims for injunctive relief, said claims (Counts XI and XII) are DISMISSED.  Amendment would be futile, so the dismissal is without leave to amend.  If Plaintiffs are entitled to injunctive relief in connection with any of their claims, they may pursue it when appropriate.

### E.   Statute Of Limitations

The City also seeks dismissal on statute of limitations grounds.  It contends that the § 1983 claims are barred by the applicable two-year statute of limitations and the fraud and negligent misrepresentation claims are barred by the applicable six-year statute of limitations because the conduct of the Individual Defendants allegedly occurred since 2009.  ECF No. 14-1 at 13–15, 18, 21, 23.  Plaintiffs

38

counter that their claims are not time barred under the discovery rule and the continuing violations doctrine, which they disavowed at the hearing.  ECF No. 22 at 16–18, 25–26, 28.

To the extent the claims against the City are predicated on the Individual Defendants' conduct, the Court's earlier statute of limitations rulings apply to the § 1983 claims.  Fraud and negligent misrepresentation claims are subject to a six-year statute of limitations.  *See* HRS § 657–1(4); *Aana*, 965 F. Supp. 2d at 1182; *Eastman v. McGowan*, 86 Hawaiʻi 21, 27, 946 P.2d 1317, 1323 (1997).  Any claims relating to conduct before August 16, 2015 are therefore barred. Plaintiffs are cautioned that an amended pleading should include clearer allegations regarding the timeliness of their claims.

## CONCLUSION

Based on the foregoing, the Court GRANTS (1) the City's Motion to Dismiss Complaint, ECF No. 14, and (2) the Individual Defendants' Motion to Dismiss, ECF No. 15.  Plaintiffs' claims are dismissed with leave to amend, except those barred by the applicable statute of limitations.  Plaintiffs shall file an amended complaint by January 12, 2022 and may not add new claims or parties without obtaining leave of court.

//

//

IT IS SO ORDERED.

DATED:     Honolulu, Hawaiʻi, December 13, 2021.



Jill A. Otake
United States District Judge

Civil No. 21-00345 JAO-KJM, *Ohana Control Systems, Inc. v. City and County of Honolulu*; ORDER GRANTING (1) THE CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS COMPLAINT AND (2) DEFENDANTS WAYNE K. MASUDA, SHELDON YASSO, TIM CAIRES, JEFFREY K. LEE, AND DAVID MALONE'S MOTION TO DISMISS COMPLAINT