IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OHANA CONTROL SYSTEMS, INC. and MICHAEL AMIR BOROCHOV, | CIVIL NO. 21-00345 JAO-KJM |
| Plaintiffs, | ORDER (1) GRANTING THE CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS WAYNE K. MASUDA, TIM CAIRES, JEFFREY K. LEE, AND DAVID MALONE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| vs. | |
| CITY AND COUNTY OF HONOLULU; WAYNE K. MASUDA; TIM CAIRES; JEFFEREY K. LEE; DAVID MALONE; and DOE DEFENDANTS 1–20, | |
| Defendants. | |

**ORDER (1) GRANTING THE CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS WAYNE K. MASUDA, TIM CAIRES, JEFFREY K. LEE, AND DAVID MALONE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

This action stems from the Honolulu Fire Department ("HFD") Fire Prevention Bureau's ("FPB") purportedly selective enforcement of the Fire Code and other policies against Plaintiff Ohana Control Systems, Inc. ("Ohana"), in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants the City and County of Honolulu ("the City"), Wayne Masuda ("Masuda"), Tim Caires ("Caires"), Jeffrey Lee ("Lee"), and David Malone

("Malone")[1] (collectively, "Defendants") move to dismiss the First Amended

Complaint.  ECF Nos. 32, 33.  For the following reasons, the Court GRANTS IN

PART AND DENIES IN PART the motions.

## BACKGROUND

### I.    Factual History

Ohana is the exclusive distributor of Hochiki America ("Hochiki") fire

alarm systems in Hawaiʻi and has installed these systems in approximately 100

buildings in Honolulu since 2009.  ECF No. 30 ¶¶ 40, 42.  According to Plaintiffs

Ohana and Michael Amir Borochov ("Amir"), Ohana's President (collectively,

"Plaintiffs"), Defendants demanded that Ohana meet requirements not required of

other alarm installers to pass inspections.  *Id.* ¶ 27.  Plaintiffs aver that Defendants

singled out Ohana and discriminated against it on the basis of Amir's

Jewish/Israeli background, and/or that Ohana was treated differently than similarly

situated fire alarm installers without a rational basis.  *Id.* ¶¶ 29–30.

The Individual Defendants were employed by HFD at all relevant times or at

various periods during the relevant time.  *Id.* ¶¶ 9–12.  Masuda was an HFD

---

[1]  Masuda, Caires, Lee, and Malone will collectively be referred to as the
"Individual Defendants."  Masuda and Caires will collectively be referred to as the
"Supervisory Defendants."  The Individual Defendants are sued in their individual
capacities.  ECF No. 30 ¶ 15.

Battalion Chief who supervised Caires, Lee, and Malone.  *Id.* ¶ 13.  Caires became

Captain in 2017 and supervised Malone and Lee.  *Id.* ¶ 14.

### A.    Mott-Smith Project

FPB approved a fire alarm system installed by Ohana at the Mott-Smith

Laniloa condominium ("Mott-Smith") on May 26, 2014, then again in 2016 after

Ohana installed an emergency generator.  *Id.* ¶¶ 58–60.  In October 2017, Lee

purportedly told the Mott-Smith association of apartment owners ("AOAO") that

its fire alarm system was never inspected for a final acceptance test, that the system

was impaired, and that a fire watch had to be implemented.  *Id.* ¶¶ 63–64.  The

AOAO sued Ohana for millions of dollars and the lawsuit remains pending.  *Id.*

¶ 65.

### B.    Chateau Waikiki Project

The fire alarm system on Douglas Engineering Pacific, Inc.'s ("DEP") plans

for the Chateau Waikiki, approved by FPB, did not include a requirement for

firefighter's phone jacks, so the system was installed without them.  *Id.* ¶¶ 77–78,

82.  Caires subsequently insisted on the installation of firefighter's phone jacks,

even though FPB had not required it on any of DEP's other fire alarm installation

projects in the eight years prior.  *Id.* ¶¶ 83, 85.

### C.    Country Club Plaza Project

In September 2020, Malone began inspecting fire alarm systems installed by Ohana at Country Club Plaza.  *Id.* ¶¶ 94–95.  He scheduled the final inspection and acceptance test over multiple days, whereas Ohana believes it should have concluded in one day.  *Id.* ¶ 99.  Plaintiffs allege that Malone imposed additional testing requirements not required of other fire alarm installers, such as radio test reports for each building, 100% testing of all units, and a higher percentage of pull station tests.  *Id.* ¶ 101.

### D.    Halekuluanui Project

Malone scheduled a final inspection and acceptance test for the Halekuluanui project, extending over multiple half days, in April 2021.  *Id.* ¶ 112.  Ohana complained to FPB about the extended inspection and Malone later claimed that he got in trouble.  *Id.* ¶¶ 115–16.  Plaintiffs claim that Malone requested that 100% of the units be inspected, a requirement not imposed on other fire alarm installers.  *Id.* ¶ 117.

### E.    1010 Wilder Project

At 1010 Wilder, Malone scheduled yet another multi-day final inspection and acceptance test.  *Id.* ¶ 130.  Malone purportedly told Amir that Ohana's inquiries about the multi-day inspections got him in trouble and that he would therefore proceed "by the book."  *Id.* ¶ 131.  Malone also allegedly said he had a

problem with Amir.  *Id.* ¶ 132.  During the inspection, Malone imposed the following requirements that are not imposed upon other fire alarm installers: checking 100% of devices; presence of the electrician/RME, never before required; and removal, testing, and reinstallation of three speakers, three strobes, three pull stations, three sounder boards, and three smoke detectors per floor, when FPB would ordinarily spot test one or two devices on every other floor.  *Id.* ¶¶ 133–35. The system failed the inspection due to Malone's opinion that notification devices were required on the lanais, despite the fact that FPB approved the plans without those devices, and that neither the Fire nor Building Codes require those devices. *Id.* ¶¶ 136–37.  Prior to this project, FPB did not check the audibility of notification devices on lanais and did not require lanai notification devices on fire alarm installation projects that did not include such devices in the plans it already approved.  *Id.* ¶¶ 138–39.  In June 2021, following Malone's refusal to pass the system, FPB did not impose these requirements on different fire alarm installers at different condominiums.  *Id.* ¶¶ 141–43.

## II.   Procedural History

Plaintiffs commenced this action on August 16, 2021.  Defendants sought dismissal and on December 13, 2021, the Court granted their motions to dismiss. ECF No. 29; *see also Ohana Control Sys., Inc. v. City & County of Honolulu*, CIVIL NO. 21-00345 JAO-KJM, 2021 WL 5890659 (D. Haw. Dec. 13, 2021).

Specifically, the Court dismissed all claims against the individual defendants named in the Complaint with leave to amend, except for the underlying allegations that were dismissed with prejudice as untimely. *See Ohana*, 2021 WL 5890659, at *10. The Court dismissed all claims against the City with leave to amend except the injunctive relief counts, which were dismissed without leave to amend because they are not standalone causes of action. *See id.* at *14.

On January 12, 2022, Plaintiffs filed a First Amended Complaint ("FAC") asserting the following claims:

> Count I: Fourteenth Amendment equal protection violation under 42 U.S.C. § 1983 against the Individual Defendants;
>
> Count II: Fourteenth Amendment equal protection violation — supervisory liability — under § 1983 against the Supervisory Defendants;
>
> Counts III and IV: Fourteenth Amendment equal protection violation — municipal liability based on policy, practice, or custom and failure to train and supervise — under § 1983 against the City;
>
> Count V: intentional infliction of emotional distress ("IIED") against the Individual Defendants;
>
> Count VI: fraud — plan review fees — against the City;
>
> Counts VII: negligent misrepresentation — plan review fees — against the City; and
>
> Counts VIII and IX: injunctive relief against the City.

ECF No. 30 at 10–56.

On January 26, 2022, the City and the Individual Defendants filed motions to dismiss the FAC.  ECF Nos. 32–33.  Plaintiffs filed oppositions on March 24, 2022.  ECF Nos. 38–39.  On April 7, 2022, Defendants filed replies.  ECF Nos. 41–42.

The Court held a hearing on May 13, 2022.  ECF No. 45.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

7

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions. *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

A claim may be dismissed at this stage on the basis that it is untimely.  However, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is

_____

[2]  Both in their Opposition and at the hearing, Plaintiffs cited *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*, but suggested that *Iqbal*/*Twombly* allow for notice pleading.  ECF No. 39 at 15 ("Here, Plaintiff sufficiently pled facts to satisfy Rule 8 notice pleading standards and the facts alleged plausibly state each claim."); *see also id.* at 19 ("The FAC meets Rule 8 notice pleading on this issue[.]").  *Iqbal* and *Twombly* rejected a notice pleading standard, however.  *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1179 (9th Cir. 2021) (citations omitted).

barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010) (citation omitted).  In fact, "'[a] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## DISCUSSION

## I.     Individual Defendants' Motion To Dismiss

The Individual Defendants move for dismissal of the constitutional claims on qualified immunity grounds and the IIED claim for failure to state a claim and/or as time-barred.  ECF No. 33-1.

### A.     Statute Of Limitations

The Individual Defendants argue that Lee and Caires are entitled to qualified immunity because the allegations against them are barred by the statute of limitations.  ECF No. 33-1 at 7–9, 14; ECF No. 42 at 11–12, 18–19.

### 1. § 1983 Claims

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (internal quotation marks and citation omitted). Hawaii's statute of limitations for personal injury actions is two years. *See* Hawai'i Revised Statutes ("HRS") § 657-7. However, federal law governs the accrual of civil rights claims, which occurs "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Klein*, 865 F.3d at 1278 (internal quotation marks and citations omitted). Under this discovery rule, a plaintiff must "be diligent in discovering the critical facts of the case." *Id.* (citation omitted).

### a. Lee

The Individual Defendants contend that the allegations against Lee are time-barred because Lee's alleged misconduct — informing the Mott-Smith AOAO that its fire alarm system was never inspected for a final acceptance test — occurred in October 2017 and Plaintiffs are not entitled to equitable tolling. ECF No. 33-1 at 7–9. Plaintiffs refute the applicability of equitable tolling, arguing that under the discovery rule, their claim did not accrue until they became aware of Lee's misconduct in April 2021. ECF No. 39 at 17–19.

10

The Individual Defendants conflate equitable tolling and the discovery rule. "The discovery rule serves to extend the time from which the limitations period starts to run until 'the plaintiff knows both the existence and the cause of his injury.'" *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (citation omitted). Equitable tolling, on the other hand, "may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim" and it "focuses on a plaintiff's excusable ignorance and lack of prejudice to the defendant." *Id.* (internal quotation marks and citations omitted). Equitable tolling differs from the discovery rule in that the statute of limitations has started to run but the plaintiff is unable to obtain "information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Id.* (internal quotation marks, citation, and footnote omitted).

Here, Plaintiffs allege that they did not become aware of Lee's misconduct until April 2021 through discovery documents in the Mott-Smith litigation, *see* ECF No. 30 ¶ 76, and that they had no reason to inquire before then. ECF No. 39 at 18–19. This allegation implicates the discovery rule, not equitable tolling. The Individual Defendants argue that Plaintiffs should have made inquiries with Mott-Smith and/or HFD when a 24-hour-a-day fire watch was implemented in May 2019. ECF No. 42 at 12. But it is unclear that Plaintiffs knew about the watch and even if they did, that it would have obligated them to inquire about the cause. As

11

matters stand, Plaintiffs' allegations sufficiently indicate that the claim against Lee might not have accrued until April 2021.  The claim should not be dismissed because its untimeliness is not apparent from the face of the FAC nor is it beyond doubt that Plaintiffs "can prove no set of facts that would establish the timeliness of the claim." *Von Saher*, 592 F.3d at 969 (internal quotation marks and citation omitted).  Indeed, because the discovery rule, like equitable tolling, relies "on matters outside the pleadings . . . it is rarely appropriate to grant a Rule 12(b)(6) motion." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003 (9th Cir. 2006) (citation omitted).

The Individual Defendants accuse Plaintiffs of failing to present certain allegations, such as:  (1) specific details regarding the discovery at issue and why it could not have been sought before the Mott-Smith litigation; (2) how Lee's statement caused the Mott-Smith litigation; and (3) why Plaintiffs could not have quickly and easily proven that a final acceptance was performed.  ECF No. 33-1 at 8–9.  None of the foregoing are pleading requirements necessary to survive dismissal on statute of limitations grounds.  For these reasons, the Court declines to dismiss the § 1983 claim against Lee as untimely at this time.

### b. Caires

The Individual Defendants argue that allegations against Caires regarding the Chateau Waikiki project — requiring the installation of firefighter's phone

jacks — are untimely because they occurred on June 5, 2019, more than two years before the commencement of this case. *Id.* at 14. Plaintiffs posit that the allegations are timely because the final decision concerning the firefighter's phone jacks occurred within the statute of limitations. ECF No. 39 at 28. Plaintiffs appear to analogize the issuance of a "final" decision with the conclusion of administrative proceedings. However, Plaintiffs assert a § 1983 claim against Caires; this is not an administrative appeal or other claim that requires finality and/or the exhaustion of administrative remedies prior to suit.[3] Plaintiffs were aware, as of June 5, 2019, that Caires engaged in purported misconduct because during the eight-year period prior to the Chateau Waikiki project, FPB informed electrical engineers that it did not want or require installation of firefighter's phone jacks and did not require firefighter's phone jacks on any of DEP's fire alarm installation projects with other alarm installers. ECF No. 30 ¶¶ 81, 83, 85. The allegations are not timely merely because discussions continued after June 5, 2019 and a final determination was not made until sometime after August 16, 2019. The key trigger date is June 5, 2019, the day Plaintiffs admittedly *knew* Caires was requiring something out of the ordinary. The Court previously dismissed as untimely the claims predicated on Caires's misconduct related to the Chateau

---

[3] Plaintiffs' authorities from New York district courts are therefore wholly inapposite. ECF No. 39 at 28.

Waikiki project that occurred before August 16, 2019, *see Ohana*, 2021 WL 5890659, at *6, *10, and it upholds that ruling now.  Hence, Caires's Chateau Waikiki project acts are barred by the statute of limitations and DISMISSED with prejudice.

### B.   Count I:  Fourteenth Amendment Equal Protection Violation Under § 1983 Against The Individual Defendants

The Individual Defendants also assert, in connection with their qualified immunity argument, that Plaintiffs fail to state an equal protection claim under a class-of-one theory.  ECF No. 33-1 at 9–12, 15–16, 18–21, 24–25, 27–28.  As a preliminary matter, Plaintiffs have improperly reasserted allegations regarding a class-based theory.  *See*, *e.g.*, ECF No. 30 ¶¶ 70, 87, 145, 169.  Plaintiffs already conceded that they are exclusively proceeding on a class-of-one theory, *see Ohana*, 2021 WL 5890659, at *6,[4] and they have not sought or obtained leave to expand the scope of their equal protection claim.  Therefore, to the extent Plaintiff presents class-based allegations, they will only be considered within the confines of a class-of-one theory.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the

---

[4]  In fact, the Court advised Plaintiffs that they should not include class-based allegations in the FAC given that they are proceeding on a class-of-one theory.  *See Ohana*, 2021 WL 5890659, at *10 n.8.

14

laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Sampson v. County of Los Angeles ex rel. L.A. Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1022 (9th Cir. 2020) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (some internal quotation marks omitted).  In a "class of one" equal protection claim, the plaintiff must allege that "[he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (some internal quotation marks and citations omitted).  The Ninth Circuit has "recognized that the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government *action*."  *Gerhart v. Lake County*, 637 F.3d 1013, 1023 (9th Cir. 2011) (footnote omitted).

"The class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (quoting *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 603 (2008)).  The Supreme Court has explained:

> In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would

15

undermine the very discretion that such state officials are entrusted to exercise.

*Enquist*, 553 U.S. at 603; *see Towrey*, 672 F.3d at 660 (quoting *id.*).

Courts within the Ninth Circuit have "'enforced the similarly-situated requirement with particular strictness when the plaintiff invokes the class-of-one theory.'" *Leen v. Thomas*, __ F. Supp. 3d __, 2020 WL 1433143, at *6 (E.D. Cal. Mar. 24, 2020) (quoting *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016)) (brackets and other citations omitted). "'Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Id.* (quoting *Warkentine*, 152 F. Supp. 3d at 1294); *see also Hood Canal Sand & Gravel, LLC v. Brady*, 129 F. Supp. 3d 1118, 1125 (W.D. Wash. 2015) ("'[Class-of-one plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects.'" (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)) (brackets in original)).

Plaintiffs allege that the Individual Defendants selectively enforced laws against them and treated them differently from similarly situated fire alarm system installers Systems Engineering Group, LLC, In Control, Island Signal & Sound, Honeywell, SimplexGrinnell, ProTech, and National Fire Protection ("similarly situated installers") on various installation projects without a rational basis. ECF No. 30 at 10–34. Plaintiffs explain that like Ohana, the similarly situated installers

16

are fire alarm installers for high rise condominiums in Honolulu, Hawaiʻi; they have employees that meet minimum licensing, training and/or certification requirements; they often bid on the same fire installation projects; they install substantially equivalent fire alarm systems; and their systems are tested and inspected by FPB.  *Id.* ¶¶ 51–56.

According to Plaintiffs, the Individual Defendants treated them differently than the similarly situated installers in the following respects:  (1) Lee falsely informed the Mott-Smith AOAO that its fire alarm system was never inspected for a final inspection test and that the system was impaired, thereby requiring a fire watch, *id.* ¶¶ 63–64; (2) Malone scheduled the fire alarm system's final inspection and acceptance test for each building at Country Club Plaza over multiple days when it could have been completed in one day and requested radio test reports for each building, 100% testing of the units, and a higher percentage of pull station tests, *id.* ¶¶ 99, 101; (3) Malone scheduled the fire alarm system's final inspection and acceptance test for the Halekuluanui project over multiple days when it could have been completed in one day and requested inspection of 100% of the units, *id.* ¶¶ 112, 117; and (4) Malone scheduled the fire alarm system's final inspection and acceptance test for 1010 Wilder over multiple days when it could have been completed in one day and required (a) inspection of 100% of the devices, (b) the electrician's presence during the inspection, (c) removal, testing, and reinstallation

17

of 15 devices (three speakers, three strobes, three pull stations, three sounder boards, and three smoke detectors) per floor, and (d) audibility of notification devices on lanais even though the Fire Code and building code do not require notification devices or audibility of the same, the plans were approved without notification devices, and FPB had never required them prior, *id.* ¶¶ 130, 133–39. In addition, Caires contacted Hochiki to inquire about its systems — going so far as to allegedly make veiled threats — but did not contact the electrical engineers on Ohana's projects to obtain the requested information notwithstanding that the engineers determine the appropriate fire alarm system equipment use, *id.* ¶¶ 153–54, 157–58.

The Individual Defendants contend that these allegations are deficient because they do not suggest an absence of discretionary decisionmaking or rational basis; they fail to demonstrate that the similarly situated installers were in fact similar or that the Individual Defendants treated the similarly situated installers differently; and they do not establish causation.  ECF No. 33-1 at 9–12, 17–28. However, the Individual Defendants attempt to impose an unreasonably demanding pleading standard and/or insist that irrelevant allegations are missing. For example, the Individual Defendants focus on Plaintiffs' failure to show that Lee's purported misrepresentations to the Mott-Smith AOAO — and not Plaintiffs' defective installation — caused the AOAO to file suit against Plaintiffs. *Id.* at 9–

10.  The Individual Defendants also contend that a similarly situated fire alarm installer would have to have prima facie identical projects and have engaged in the very acts Plaintiffs are accused of in the Mott-Smith litigation.  *Id.* at 10–11.  But the FAC identifies the Mott-Smith litigation as a *consequence* of Lee's supposed constitutional violation, *see* ECF No. 30 ¶ 65, so the allegations in the Mott-Smith litigation are not the proper measure of whether another installer is "similarly situated."

The Individual Defendants' arguments misapprehend the crux of the claim — Lee misinformed the AOAO that the fire alarm system was impaired and was never inspected for a final acceptance test.  *Id.* ¶¶ 63–64.  This is distinct from whether Mott-Smith was satisfied with Plaintiffs' performance.  Plaintiffs aver that false statements were not made to the similarly situated installers' clients and there was no rational basis for the distinction in treatment.  *Id.* ¶¶ 66–68.  The Individual Defendants offer a host of justifications for their conduct and deem discretionary all actions, *see* ECF No. 33-1 at 17–28, but their refutation of Plaintiffs' allegations is inappropriate on a motion to dismiss, as the Court must accept Plaintiffs' allegations as true and Plaintiffs need only *state* a claim at this juncture, not *prove* it.

For these reasons, Plaintiffs' equal protection claim (Count I) is adequately pled.

### 1.      Qualified Immunity

Government officials are entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted); *see also Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) ("State officials have qualified immunity from civil liability under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (citation omitted)).  "Conduct violates a 'clearly established' right if 'the unlawfulness of the action in question [is] apparent in light of some pre-existing law.'" *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022) (quoting *Benavidez v. County of San Diego*, 993 F.3d 1134, 1151–52 (9th Cir. 2021)) (alteration in original).  "[T]he clearly established right must be defined with specificity" and not "at a high level of generality." *City of Escondido v. Emmons*, 586 U.S. __, 139 S. Ct. 500, 503 (2019) (per curiam) (internal quotation marks and citation omitted).  It is unnecessary to have a Supreme Court or circuit case "directly on point" for a right to be "clearly established," but "'existing precedent must place the lawfulness of the conduct beyond debate.'" *Ballou*, 29 F.4th at 421 (quoting *Tobias v. Arteaga*, 996 F.3d 571, 580 (9th Cir. 2021)).

To reject a qualified immunity defense, courts "must find that 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right.'"  *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007) (alteration in original) (citations omitted); *see also Hyde v. City of Willcox*, 23 F.4th 863, 869 (9th Cir. 2022).  In making such a determination, courts consider "the state of the law at the time of the alleged violation" and "the 'information possessed' by the officer to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal." *Inouye*, 504 F.3d at 712 (citations omitted).  An official's subjective beliefs are irrelevant.  *See id.* (footnote and citation omitted).

Having already determined that Plaintiffs state an equal protection claim, the Court now focuses on whether the subject constitutional right was clearly established when the Individual Defendants engaged in the alleged misconduct. Plaintiffs cite *Village of Willowbrook v. Olech* and *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (en banc), *overruled in part on other grounds by Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007), to show that equal protection jurisprudence was clearly established.  ECF No. 39 at 24–26.

As set forth above, *Olech* recognized an "equal protection claim[] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis

21

for the difference in treatment." *Olech*, 528 U.S. at 564 (citations omitted).  The

*Olech* court explained that the purpose of the Equal Protection Clause "is to secure

every person within the State's jurisdiction against intentional and arbitrary

discrimination, whether occasioned by express terms of a statute or by its improper

execution through duly constituted agents." *Id.* (internal quotation marks and

citation omitted).  There, the defendant demanded a 33-foot easement as a

condition of connecting the plaintiff's property to the municipal water supply,

when it only required a 15-foot easement of other similarly situated property

owners.  *See id.* at 565 (citation omitted).  A significant factor in *Olech* and the

cases it relied upon "was the existence of a clear standard against which

departures, even for a single plaintiff, could be readily assessed." *Engquist*, 553

U.S. at 602.  Because the "differential treatment raised a concern of arbitrary

classification," the defendant had to provide a rational basis for its action.  *Id.* at

603.

Although *Olech* is not squarely on point[5] — which is not required — it

clearly establishes the equal protection right at issue, *i.e.*, the lawfulness of the

---

[5]  The Individual Defendants argue that Plaintiffs bear the burden of citing case law
that "squarely governs" their actions.  ECF No. 42 at 16. But the Supreme Court
imposed this requirement in the Fourth Amendment excessive force context.  *See
Emmons*, 586 U.S. at __, 139 S. Ct. at 503 ("*Use of excessive force is an area of
the law in which the result depends very much on the facts of each case*, and thus
police officers are entitled to qualified immunity unless existing precedent squarely

(continued . . .)

conduct is beyond debate.  The Individual Defendants criticize *Olech* as highly generalized but *Olech* is precedent establishing that a governmental official cannot treat similarly situated individuals differently without a rational basis and should have put a reasonable official on notice that such conduct violates equal protection rights.  Indeed, "'general statements of the law are not inherently incapable of giving fair and clear warning' to officers," but "the unlawfulness must be apparent" under pre-existing law. *White v. Pauly*, 580 U.S. 73, __, 137 S. Ct. 548, 552 (2017) (some internal quotation marks and citations omitted).  Unlike the Fourth Amendment excessive force context, where specificity is particularly important, *see Emmons*, 586 U.S. at __, 139 S. Ct. at 503, in the equal protection context, an official can more readily determine whether he or she is treating someone differently than others similarly situated without a rational basis.

Accordingly, the Individual Defendants are not entitled to qualified immunity at this stage of the proceedings.

### C.    Count II:  Fourteenth Amendment Equal Protection Violation — Supervisory Liability — Under § 1983 Against The Supervisory Defendants

The Individual Defendants argue that Plaintiffs fail to state a claim for supervisory liability because no constitutional violation is adequately pled,

---

(. . . continued)

governs the specific facts at issue[.]" (internal quotation marks and citation omitted) (emphasis added)).

supervisory liability cannot be based on time-barred conduct, and Plaintiffs fail to meet the elements of supervisory liability.  ECF No. 33-1 at 13–14, 20, 22, 25.

A defendant may be subject to supervisory liability under § 1983 if he or she is personally involved in the constitutional deprivation or there exists "'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation omitted).  This requires a plaintiff to "'show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.'"  *Id.* (citation omitted).  Causal connection can be established by alleging that the supervisor set "'in motion a series of acts by others'" or "'knowingly refus[ed] to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.'"  *Id.* at 1207–08 (some brackets and citations omitted).  A supervisor can face liability in his or her individual capacity for:  (1) "his [or her] own culpable action or inaction in the training, supervision, or control of his [or her] subordinates"; (2) "acquiescence in the constitutional deprivation"; or (3) "conduct that showed a reckless or callous indifference to the rights of others."  *Id.* at 1208 (internal quotation marks and citation omitted).

Here, Plaintiffs allege that Masuda supervised Caires and Lee; that Caires supervised Lee and Malone; and that in their supervisory roles, Masuda and Caires

are liable for the acts of their subordinates.  ECF No. 30 ¶¶ 178–80.  Plaintiffs also allege that Masuda and Caires:  (1) allowed Lee to continue his wrongful conduct with respect to the Mott-Smith project despite the availability of other FPB employees and even knowing that Lee made comments[6] about Amir; (2) knew or should have known that Lee's conduct and personal animus toward Plaintiffs would result in the violation of Ohana's constitutional rights; (3) failed to properly supervise Lee if they were unaware of Lee's wrongful conduct; (4) acquiesced in Lee's constitutional violation by allowing it to continue or showed a callous and reckless disregards for Ohana's rights; (5) failed to provide proper training to their subordinates; and (6) were aware of and were personally involved in their subordinates' treatment of Ohana, by encouraging or acquiescing in it.  *Id.* ¶¶ 181–86, 189, 192.

Plaintiffs claim that Caires was involved in communications about Malone's conduct and was aware of Ohana's claims of unequal treatment but refused to stop Malone's conduct, thereby acquiescing in it or showing a reckless or callous indifference to Ohana's rights.  *Id.* ¶¶ 187–88.

---

[6] The Court views the allegation that Lee made anti-Semitic comments, *see* ECF No. 30 ¶ 181, in the limited context of Plaintiffs' class-of-one theory, and for no other equal protection theory, given Plaintiffs' prior concession that they are asserting a class-of-one claim.

These allegations continue to be conclusory and non-specific, and fail to demonstrate that supervisory liability should be imposed upon Caires and Masuda. This claim is largely comprised of formulaic language and contains internal inconsistencies.  For example, Plaintiffs aver that Masuda and Caires knew about Lee's conduct, allowed it to continue, and acquiesced in it.  *Id.* ¶¶ 181–83, 185–86. Yet Plaintiffs concurrently allege that if Masuda and Caires were unaware of Lee's conduct, they failed to properly supervise him.  *Id.* ¶ 184.  Plaintiffs cannot present contradictory allegations *in the same claim* hoping that something sticks.  In light of the claim's deficiencies, it is DISMISSED.  Although Plaintiffs already amended this claim, the Court will grant one more opportunity to cure the aforementioned deficiencies.  Plaintiff must present sufficient factual allegations to plausibly state a claim under the legal standard identified herein.

### D.    Count V:  IIED Claim Against The Individual Defendants

The Individual Defendants argue that the IIED claim fails because it is time-barred and/or Plaintiffs insufficiently pled duty, breach, causation, and outrageous conduct.  ECF No. 33-1 at 28; ECF No. 42 at 21.  The acts that are the subject of this claim are not time-barred so dismissal is not warranted on that basis.  As for the sufficiency of the allegations, it is unclear why the Individual Defendants point to Plaintiffs' failure to present the elements of a negligence claim as a basis to dismiss an IIED claim.

An IIED claim consists of the following elements:  "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  *Hac v. Univ. of Hawaiʻi*, 102 Hawaiʻi 92, 106–07, 73 P.3d 46, 60–61 (2003) (citations omitted). "The terms 'unreasonable' and 'outrageous' have been used interchangeably and have been construed to mean 'without just cause or excuse and beyond all bounds of decency.'"  *Lee v. Aiu*, 85 Hawaiʻi 19, 34 n.12, 936 P.2d 655, 670 n.12 (1997) (citation omitted).  The Hawaiʻi Supreme Court, relying on the Restatement (Second) of Torts, has described "outrageous" conduct rendering actionable an IIED claim as follows:

> "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Ross v. Stouffer Hotel Co. (Hawaiʻi) Ltd.*, 76 Hawaiʻi 454, 465 n.12, 879 P.2d 1037, 1048 n.12 (1994) (quoting Restatement (Second) of Torts § 46 cmt. d).

The FAC alleges that the Individual Defendants' discrimination against Plaintiffs — by treating them differently and selectively applying the Fire Code —

was intentional, reckless; and outrageous.  ECF No. 30 ¶¶ 231–33.  Plaintiffs claim that the unequal treatment delayed projects and payments, caused them to incur additional costs, harmed their reputation in the community, and jeopardized their business and the livelihood of their employees.  *Id.* ¶¶ 236–37, 239.  Plaintiffs characterize as outrageous the Individual Defendants' improper use of governmental force to put Ohana out of business due to their disdain for Amir.  *Id.* ¶ 238.  As a result of the Individual Defendants' actions, Amir purportedly suffered severe emotional distress, including anger, disappointment, anxiety, worry, sleeplessness, and nausea.  *Id.* ¶ 241.  Because the foregoing allegations sufficiently state an IIED claim, the Court declines to dismiss it.

In sum, the Court dismisses with prejudice as untimely the allegations regarding Caires' actions related to the Chateau Waikiki project; dismisses with leave to amend the supervisory liability claim (Count II); finds that Plaintiffs adequately state an equal protection claim (Count I) and IIED claim (Count V); and finds that the Defendants are not entitled to qualified immunity based on the present record.

## II.    The City's Motion To Dismiss

The City seeks dismissal of all claims against it on multiple grounds.  The Court addresses each claim in turn.

28

A.     **Counts III And IV:  Fourteenth Amendment Equal Protection Violations — Municipal Liability — Under § 1983**

Plaintiffs claim that the City is liable for allowing the Individual Defendants to engage in the conduct complained of in this litigation.  They rely on two theories of liability:  (1) policy, practice, or custom; and (2) failure to train and supervise.

1.     **Policy, Practice, Or Custom (Count III)**

"Liability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (some internal quotation marks omitted) (citing *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002)).  A policy or custom may be shown in three ways:  (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."  *Id.* (some internal quotation marks and citation omitted).  A "municipal policy 'may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or

29

reprimanded.'" *Id.* (citation omitted); *see Connick v. Thompson*, 563 U.S. 51, 61 (2011) (including as an example of official municipal policy "practices so persistent and widespread as to practically have the force of law" (citations omitted)).  Isolated or sporadic incidents are insufficient; "[l]iability for improper custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

For a municipality to be liable, its custom or policy must also "evince a 'deliberate indifference' to the constitutional right and are the 'moving force behind the constitutional violation.'" *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010) (citation omitted).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  A policy is a moving force if it is "closely related to the ultimate injury" and a plaintiff must "establish 'that the injury would have been avoided' had proper policies been implemented." *Long v. County of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006) (some internal quotation marks and citations omitted).  Where, as here, Plaintiffs claim that the City allowed or encouraged the Individual Defendants to inflict the alleged injuries, not that the City directly inflicted injuries itself, "rigorous standards of culpability and causation must be

applied to ensure that the municipality is not held liable solely for the actions of its employee[s]." *Brown*, 520 U.S. at 405 (citations omitted).

The municipal liability claim consists of the following allegations:  the Fire Code and illegal rules were selectively applied to Ohana and the difference in application was intentional and unreasonable; the City has maintained a continuing policy for years that permits, condones, and/or encourages the Individual Defendants' selective enforcement of laws against Ohana; the policy is so pervasive, widespread, and longstanding that it constitutes official policy; the policy violates the Equal Protection Clause by impermissibly and irrationally allowing discrimination against individuals for personal reasons; the City knew or should have known that its longstanding adherence to the policy encouraged and emboldened the Individual Defendants; and the policy evidences a deliberate indifference to Ohana's constitutional rights and was the moving force behind the violation of the same.  ECF No. 30 ¶¶ 205–11.  These bare, conclusory allegations do not adequately state a claim.  Mere recitation of the elements of a cause of action does not suffice.  *See AE v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Iqbal* and *Twombly* to *Monell*[7] claims).  Additionally, Plaintiffs exclusively address harms allegedly perpetuated against them and there are only a handful of incidents that are the subject of this litigation.  It is unclear how these

---

[7]  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

sporadic incidents, affecting only Plaintiffs, can amount to a custom or policy.  At

the hearing, Plaintiffs' counsel argued that it is difficult to plead a custom or policy

without the allegations excluded on statute of limitations grounds.  Even if these

allegations can show a longstanding custom or policy, that would not address the

fact that Plaintiffs only claim that the custom or policy is applied to them on

certain projects.

Plaintiffs argue that they incorporate all preceding paragraphs of the FAC by

reference so they state a claim.  ECF No. 38 at 11.  They raised this argument in

opposing the City's previous motion to dismiss and the Court admonished:

> It is neither the Court nor Defendants' responsibility to scour the
> Complaint to ascertain whether any other allegations might
> pertain to this (or any other) claim such that the allegations, taken
> together, adequately state a claim.  *See Maeda v. Kennedy
> Endeavors, Inc.*, 407 F. Supp. 3d 953, 969 (D. Haw. 2019);
> *Villela v. Nevada*, No. 2:15-cv-826-LDG-VCF, 2015 WL
> 4570297, at *2 (D. Nev. May 6, 2015), *adopted by*, 2017 WL
> 1293978 (D. Nev. Mar. 10, 2017) ("It is not the court's job to
> laboriously search the Complaint for factual assertions that
> could, in theory, be used to support one legal claim or another.");
> *cf. Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir.
> 1994) ("District judges are not archaeologists.  They need not
> excavate masses of papers in search of revealing tidbits — not
> only because the rules of procedure place the burden on the
> litigants, but also because their time is scarce.").

*Ohana*, 2021 WL 5890659, at *14.  As before, the Court will not fashion a claim

for Plaintiffs by joining allegations scattered throughout the hundreds of preceding

paragraphs.  The Court therefore DISMISSES Count III but will grant Plaintiffs a final opportunity to cure the deficiencies through amendment.

### 2.      Failure To Train And Supervise (Count IV)

Plaintiffs relatedly allege that the City failed to train and supervise the Individual Defendants.  They aver that the City:  (1) was obligated to enact affirmative policies and procedures to prevent constitutional violations; (2) was obligated to sufficiently train and supervise HFD employees to protect the public from constitutional injury; (3) failed to enact policies or procedures prohibiting selective enforcement of the laws without a rational basis for doing so; (4) employed individuals in FPB who lacked the experience, education, and training necessary to review plans and perform inspection and accepting testing; (5) failed to adequately train FPB employees and in fact provided no material training; (6) failed to adopt policies or procedures or provide supervision or training to address constitutional violations — notwithstanding notice from Ohana about unequal treatment and demands for equal enforcement of the Fire Code — thereby tacitly approving the misconduct; and (7) caused the deprivation of Ohana's constitutional rights by failing to train, supervise, and discipline FPB employees.  ECF No. 30 ¶¶ 214–16, 218–20, 224–27.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the

level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citation omitted). To succeed on such a claim, the failure to train employees "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (brackets and citation omitted). A city may be deliberately indifferent if city policymakers elect to retain a training program when they have "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Id.* (citation omitted). This "policy of inaction" is effectively "a decision by the city itself to violate the Constitution." *Id.* at 61–62 (internal quotation marks and citation omitted).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citation omitted). Deliberate indifference may be established by "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'" *Id.* (citation omitted). Absent notice of deficiencies in a course of training, "decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

In the present case, Plaintiffs continue to conclusorily allege that the City failed to train FPB employees, resulting in constitutional violations and demonstrating deliberate indifference.  Plaintiffs added allegations regarding employees' lack of qualifications to perform their jobs, suggesting that with the proper training, degrees, and certification, they would not inflict constitutional harms.  But this is at odds with Plaintiffs' core claim that the Individual Defendants treated Ohana differently than similarly situated installers because they did not like Amir.  As currently pled, this claim does not plausibly allege municipal liability based on a failure to train and supervise.  The Court therefore DISMISSES this claim (Count IV).  Insofar as amendment could potentially cure the deficiencies, Plaintiffs are granted a final opportunity to amend.  Any amendment should not include additional conclusory and redundant allegations.

### B.     Counts VI:  Fraud — Plan Review Fees

Plaintiffs allege that the City's failure to disclose that FPB employees were unqualified to review building plans for compliance with the Fire Code amounted to a false representation that that the employees were qualified to do so.  ECF No. 30 ¶ 271.  Plaintiffs further proffer that each time the City charged Ohana for building plan review fees, the City effectively represented that FPB employees were qualified to review the building plans.  *Id.* ¶ 273.  According to Plaintiffs, the City's failure to disclose created a false impression regarding FPB employees'

qualifications, the City failed to disclose in contemplation that Ohana and others would rely on the false impression and non-disclosure, and Ohana relied on the non-disclosures and paid the City at least $71,401.81[8] in plan review fees as a result.  *Id.* ¶¶ 274–77.

Plaintiffs proceed on a theory of fraud by omission.  ECF No. 38 at 23–24. The Restatement (Second) of Torts, adopted by Hawaiʻi for fraud by omission, provides:

> "One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question."

*Bralich v. Sullivan*, Civ. No. 17-00547 ACK-RLP, 2018 WL 11260505, at *24 (D. Haw. Apr. 10, 2018) (quoting Restatement (Second) of Torts § 551(1) (1976)) (other citation omitted).  Plaintiffs' allegations must be pled with particularity pursuant to FRCP 9(b).  *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232–33 (D. Haw. 2010).  FRCP 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir.

---

[8]  The sum of the individual payments alleged by Plaintiffs is $69,841.81.  *See* ECF No. 30 ¶ 276.

1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u–4.  FRCP 9(b)'s

purpose is threefold:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (brackets and

citation omitted).

    "Averments of fraud must be accompanied by 'the who, what, when, where,

and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1106 (9th Cir. 2003) (citation omitted); *see Cafasso ex rel. United States v.*

*Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  A plaintiff

must offer something greater "than the neutral facts necessary to identify the

transaction." *Vess*, 317 F.3d at 1106 (internal quotation marks and citation

omitted).  He or she must identify "what is false or misleading about a statement,

and why it is false." *Id.* (internal quotation marks and citation omitted).  "[T]he

circumstances constituting the alleged fraud [must] be 'specific enough to give

defendants notice of the particular misconduct . . . so that they can defend against

the charge and not just deny that they have done anything wrong.'" *Id.* (some

internal quotation marks and citation omitted).

The City argues that it is not the proper defendant because respondeat superior liability is not alleged and it is unclear how the City itself could have the requisite subjective intent.  ECF No. 32-1 at 21.  Plaintiffs counter that the City is a proper defendant pursuant to Hawai'i Revised Statutes ("HRS") § 132-9.  HRS § 132-9, which governs the submission of building plans for approval, authorizes "[t]he county fire chief . . . to require plans or documentation, or both, to show compliance with the county's adopted fire code."  HRS § 132-9.  This provision has no bearing on whether the City is the proper defendant.

"[T]he City is subject to the state's tort laws in the same manner as any other private tortfeasor."  *Kahale v. City & County of Honolulu*, 104 Hawai'i 341, 349, 90 P.3d 233, 241 (2004) (citations omitted).  But Plaintiffs do not plausibly allege that the City itself is liable for fraud by omission, nor do they assert that the City is liable under the respondeat superior doctrine.  Moreover, Plaintiffs' allegations fall well short of satisfying FRCP 9(b)'s particularity requirement.  Plaintiffs' allegations are presented in the most generalized and conclusory terms.  And fundamentally, the notion that charging plan review fees constitutes a false representation that employees are qualified is attenuated.  Even assuming this is so, it is unclear how the City itself made the representations.

For these reasons, the fraud claim (Count VI) is DISMISSED.  The Court grants a final opportunity to amend this claim but cautions Plaintiffs to carefully

consider the viability of this claim and whether it is properly asserted against the City.

### C. Counts VII: Negligent Misrepresentation — Plan Review Fees

Plaintiffs allege that each time the City charged building plan review fees, it misrepresented — due to a failure to exercise reasonable care of competence in communicating the information — that FPB employees were qualified to review the plans when none were. ECF No. 30 ¶¶ 280, 283–84. And in reliance on the misrepresentation, it paid plan review fees and suffered a loss with each misrepresentation. *Id.* ¶¶ 287–88.

Negligent misrepresentation under Hawaiʻi law requires the following elements: "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." *Santiago v. Tanaka*, 137 Hawaiʻi 137, 153–54, 366 P.3d 612, 628–29 (2016) (internal quotation marks and citations omitted).

As with the fraud claim, the City argues that it is an improper defendant. ECF No. 32-1 at 21. Plaintiffs do not present sufficient allegations indicating that the City is liable, and they have not claimed respondeat superior liability. In addition, the conclusory allegations are founded upon the questionable theory that charging fees is the equivalent of presenting false information. Plaintiffs'

threadbare recital of the elements of a negligent misrepresentation claim are insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678.

Based on the foregoing, the Court finds that Plaintiffs' negligent misrepresentation claim (Count VII) is deficiently pled and must therefore be DISMISSED.  Plaintiffs may amend this claim once more, but like the fraud claim, they should carefully consider the viability of this claim and whether it is properly asserted against the City.

### D.    Counts VIII And IX:  Injunctive Relief

The City seeks dismissal of the injunctive relief claims because all other claims against it should be dismissed and because injunctive relief is not a standalone claim.  ECF No. 32-1 at 21.  Plaintiffs counter that these claims should not be dismissed on their merits and that they asserted the claims to provide notice to the City.  ECF No. 38 at 27.  The Court rejected these very arguments in its prior order dismissing the claims *without leave to amend*.  *See Ohana*, 2021 WL 5890659, at *14 ("Insofar as Plaintiffs cannot sustain standalone claims for injunctive relief, said claims (Counts XI and XII) are DISMISSED.  Amendment would be futile, so the dismissal is without leave to amend.").  The Court finds disingenuous Plaintiffs' justification that they wanted to provide the City with notice because their prayer includes identical requests for injunctive relief.  ECF

No. 30 at 56.  Plaintiffs violated the Court's Order by reasserting these claims and they are duplicative in any event.  Thus, Counts VIII and IX are DISMISSED.

In sum, the Court dismisses all claims against the City.  The municipal liability claims (Count III and IV), fraud by omission claim (Count VI ), and negligent misrepresentation claim (Count VII) may be amended.  The injunctive relief claims (Count VIII and IX) are dismissed with prejudice.

## CONCLUSION

For the reasons stated herein, the Court (1) GRANTS the City's Motion to Dismiss, ECF No. 32, and (2) GRANTS IN PART AND DENIES IN PART the Individual Defendants' Motion to Dismiss, ECF No. 33, as follows:  (1) the equal protection claim against the Individual Defendants (Count I) is adequately pled except for the untimely allegations related to Caires's Chateau Waikiki activities; (2) the supervisory liability (Count II), municipal liability (Counts III and IV), fraud by omission (Count VI), and negligent misrepresentation (Count VII) claims are dismissed with leave to amend; (3) the IIED claim (Count V) is sufficiently pled; (4) the injunctive relief claims (Count VIII and IX) are dismissed with prejudice; and (5) the Individual Defendants are not entitled to qualified immunity based on the present record.

Plaintiffs shall file an amended complaint by June 21, 2022 and may not add new claims or parties without obtaining leave of court.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 31, 2022.

Jill A. Otake
United States District Judge

Civil No. 21-00345 JAO-KJM, *Ohana Control Systems, Inc. v. City and County of Honolulu*; ORDER (1) GRANTING THE CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS WAYNE K. MASUDA, TIM CAIRES, JEFFREY K. LEE, AND DAVID MALONE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT